STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward GARRETT, Defendant-Appellant.†

Court of Appeals

*No. 00–3183–CR. Submitted on briefs July 3, 2001.—Decided September 5, 2001.*

## 2001 WI App 240

(Also reported in 635 N.W.2d 615.)

†Petition to review denied 12-17-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael P. Sessa* of *Law Office of Michael J. Schmidt*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David H. Perlman*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Edward Garrett appeals from the judgment of conviction entered after he pled guilty to two counts of felon in possession of a firearm, and one count of possession of a short-barreled shotgun, contrary to Wis. Stat. §§ 941.29(2)(a), 941.28(2) and 939.05.[1] Garrett also appeals from three orders issued by the trial court denying his motion to suppress, his motion to reconsider the suppression motion, and his motion for postconviction relief. Garrett argues that the trial court erred in denying his suppression motion because: (1) there were no exigent circumstances permitting the police officers' warrantless entry into his home; and (2) the protective sweep doctrine did not justify the officers' warrantless search of his closet where the guns were discovered. Because we conclude that the officers' warrantless entry into Garrett's home was lawful under the doctrine of exigent circumstances, and the subsequent entry into the closet was within the scope of a protective sweep, we affirm.

## I. BACKGROUND.

¶ 2. In January of 2000, several Milwaukee police officers were involved in an undercover narcotics investigation in Garrett's neighborhood. Pursuant to the investigation, an undercover police officer purchased cocaine from two individuals inside Garrett's apartment

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

building. These two suspects were arrested and questioned by an undercover officer. A few minutes after the arrest, a second undercover officer, Detective John Kaltenbrun, went into the apartment building and waited for the other officers in the hallway outside Garrett's apartment. While Detective Kaltenbrun was standing in the hallway, the door to Garrett's apartment opened, and Detective Kaltenbrun observed Garrett standing in the doorway holding a clear plastic bag containing a white substance that the officer believed to be cocaine. As Detective Kaltenbrun moved towards Garrett, Garrett quickly closed the door to his apartment.

¶ 3. The other officers then joined Detective Kaltenbrun outside Garrett's apartment. One of the officers knocked on the door, but Garrett did not answer. Another officer told Detective Kaltenbrun that a search of the suspects arrested outside had produced two corner-cut bags of cocaine. In addition, one of the suspects had informed the police that he had obtained the cocaine from "the first apartment on the first floor to the left," which was Garrett's apartment, and that the seller matched Garrett's description.

¶ 4. Another officer, Michael Crivello, then scaled the outside wall of Garrett's apartment to look through a transom[2] above a second door, which led to the kitchen of Garrett's apartment. The transom was approximately seven feet, six inches above the ground. The officer looked through the transom by propping his feet on a ledge and the doorknob and then pulling himself above the doorway. From this perch, Officer

---

[2] The AMERICAN HERITAGE DICTIONARY 1288 (2nd College Edition), defines a transom as "[a] small hinged window above a door or another window."

Crivello observed Garrett running through the kitchen towards the back of the apartment. Detective Kaltenbrun then authorized entry into Garrett's apartment.

¶ 5. The officers entered Garrett's apartment through the first door, which led into the living room of the apartment. Two officers apprehended Garrett in a back bedroom and informed Detective Kaltenbrun that Garrett was in custody. Detective Kaltenbrun then noticed an open closet door in the living room. The door was slightly ajar and a couch was positioned approximately eight to twelve inches in front of it. Detective Kaltenbrun believed that there was enough room between the open door and the couch for someone to gain access to the closet and remain hidden inside. After moving the couch aside, Detective Kaltenbrun opened the closet door and saw a short-barreled shotgun on top of some boxes, as well as a rifle in another part of the closet.

¶ 6. Garrett was subsequently charged with two counts of felon in possession of a firearm and one count of possession of a short-barreled shotgun. Garrett filed a motion to suppress the guns seized from his apartment, which the trial court denied. Garrett then filed a motion for reconsideration, which the trial court also denied. Ultimately, Garrett pled guilty to the charges and the trial court sentenced him to three years' imprisonment with three years of extended supervision. Finally, Garrett filed a motion for postconviction relief, but he was again denied relief by the trial court.

## II. ANALYSIS.

¶ 7. On review of a trial court's denial of a motion to suppress, we will uphold the trial court's findings of fact unless they are clearly erroneous. WIS.

STAT. § 805.17(2); *State v. Williamson*, 113 Wis. 2d 389, 401, 335 N.W.2d 814 (1983). Whether a search is valid, however, is a question of constitutional law which we review *de novo*. *State v. Guzman*, 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992).

¶ 8. "The Fourth Amendment to the United States Constitution and art. I, § 11, of the Wisconsin Constitution both protect against unreasonable searches and seizures." *State v. Phillips*, 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998). The Fourth Amendment was primarily intended to protect against physical entry into the home, *see id.* at 195–96, and, therefore, warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). "These exceptions have been 'jealously and carefully drawn,' and the burden rests with those seeking exemption from the warrant requirement to prove that the exigencies made that course imperative." *State v. Boggess*, 115 Wis. 2d 443, 449, 340 N.W.2d 516 (1983) (citations omitted).

*A. Entry Into Garrett's Apartment*

¶ 9. An exception to the warrant requirement arises when the State can demonstrate "both probable cause and exigent circumstances that overcome the individual's right to be free from government interference." *State v. Hughes*, 2000 WI 24, ¶ 17, 233 Wis. 2d 280, 607 N.W.2d 621. "To determine whether the entry was lawful, we must answer two questions: first, did the officers have probable cause to believe that [Garrett's]

apartment contained evidence of a crime, and second, did exigent circumstances exist at the time of the entry to establish an exception to the warrant requirement?" *Id*. at ¶ 18.

¶ 10. Here, Garrett does not dispute the existence of probable cause to search his apartment; instead, he contends there were no exigent circumstances justifying the warrantless entry and search of his apartment. Based on the information given to the officers by the individual arrested outside Garrett's apartment implicating Garrett in the drug deal, and Detective Kaltenbrun's observation of Garrett with what appeared to be a baggie containing cocaine, we conclude that there was a fair probability that contraband or evidence of a crime would be found in Garrett's apartment and, therefore, the officers had probable cause to enter. *Id*. at ¶ 21. We must now answer the second question and determine whether exigent circumstances provided an exception to the warrant requirement, justifying the officers' warrantless entry into and search of Garrett's apartment.

¶ 11. In determining whether exigent circumstances existed, we apply an objective test to decide "whether a police officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would gravely endanger life, risk destruction of evidence, or greatly enhance the likelihood of the suspect's escape." *Id*. at ¶ 24. Our supreme court has identified four exigent circumstances necessary to justify a warrantless entry: "(1) an arrest made in 'hot pursuit,' (2) a threat to safety of a suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will

flee." *Id.* at ¶ 25. Here, both sides focus their arguments on the risk of destruction of evidence.

¶ 12. The State argues that exigent circumstances existed because the officers reasonably believed that any delay in procuring a search warrant would risk the destruction of evidence based on: (1) Detective Kaltenbrun's observation, through the open apartment door, of Garrett holding a baggie of cocaine, which justified a warrantless entry under *Hughes*; and (2) Officer Crivello's observation, through the transom above the door to Garrett's kitchen, of Garrett running towards the back of the apartment. Conversely, Garrett argues that the State fails to demonstrate exigent circumstances because *Hughes* is distinguishable and Officer Crivello violated his expectation of privacy when he scaled the wall outside his apartment to look through the transom. We are satisfied that the warrantless entry of Garrett's apartment was justified under *Hughes* based on Detective Kaltenbrun's encounter with Garrett and the surrounding circumstances. We reach that conclusion, however, absent Officer Crivello's observations through the transom.[3]

¶ 13. Garrett argues that *Hughes* is not controlling because he was not aware that the police were outside his door. Garrett further asserts that there were exigent circumstances justifying a warrantless entry only after Officer Crivello scaled the wall outside the apartment and looked into the apartment through the transom. Garrett concludes that without this improp-

---

[3] Therefore, we will not address the constitutionality of the officer's observations from the transom. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (holding that if a decision on one point disposes of the appeal, then the appellate court need not decide other issues raised).

erly obtained information, there were no exigent circumstances justifying the officers' entry into and search of his apartment and, therefore, the trial court erred in denying his motion to suppress. We disagree. The detective's observation of Garrett with what appeared to be cocaine, coupled with Garrett's flight into the apartment, his failure to answer the door, and the surrounding drug activity, created a reasonable belief that Garrett was in the process of destroying evidence.

¶ 14. In *Hughes*, the officers in question were at the threshold of an individual's apartment, in the process of investigating a complaint of trespassing, when Hughes unexpectedly opened the front door. *Id.* at ¶ 1. The officers quickly detected a strong odor of marijuana and decided to immediately enter the apartment because they feared that any evidence would be destroyed if they waited to obtain a warrant, since Hughes had already been alerted to their presence. *Id.* While Hughes tried to slam the door, the officers prevented her from closing the door and entered the apartment. *Id.* at ¶ 5.

¶ 15. Based on these facts, our supreme court held that the strong odor of marijuana coming from the apartment, coupled with the occupants' knowledge that the police were standing outside, amounted to exigent circumstances justifying the warrantless entry and subsequent search. *Id.* at ¶ 26. The court concluded that it is reasonable to assume that a drug possessor, who knows that the police are outside waiting for a warrant, would use the delay to destroy the evidence. *Id.*

¶ 16. Our review of the facts in determining whether exigent circumstances exist is directed by a test of reasonableness under the totality of the circumstances. *State v. Smith*, 131 Wis. 2d 220, 229, 388

N.W.2d 601 (1986) (citation omitted). Under the facts known to Detective Kaltenbrun at the time of entry, it was reasonable for him to believe that any delay in obtaining a search warrant would create a risk that Garrett would destroy the evidence.

¶ 17. While Detective Kaltenbrun was undercover, unlike the uniformed officers in *Hughes*, here the totality of the circumstances led him to believe that Garrett was involved in the destruction of the bag of cocaine. Evidence that: (1) only minutes before, two individuals were arrested for selling narcotics to an undercover police officer in Garrett's building; (2) the detective immediately entered the building after the arrest and observed Garrett open his front door while holding a baggie of what appeared to be cocaine, the same kind of narcotic involved in the arrest outside; (3) the detective approached the doorway, but Garrett quickly slammed the door shut; (4) seconds later, one of the arresting officers reported to the detective that one of the arrested suspects said they bought the cocaine from a person fitting Garrett's description from Garrett's apartment; and (5) another officer knocked on the door that Garrett had just slammed, but received no response, was sufficient to establish probable cause and exigent circumstances.

¶ 18. Unlike the situation in *Hughes*, where the officer was in uniform, the ultimate question here is not whether Garrett knew that the detective was a police officer, but, rather, whether it was reasonable for the detective to believe that he had been identified as a police officer and the suspect would now destroy the drugs and the evidence would be lost. *See Hughes*, 2000 WI 24 at ¶ 27. We agree with the State that it was reasonable for the detective to believe that Garrett was in the process of destroying the drugs. Based on the

information the officers had received regarding the drug transaction in Garrett's apartment minutes before, combined with Garrett's own activities of casually opening the door holding a bag of cocaine, slamming the door shut after seeing the detective and then failing to answer the door, it is reasonable to believe that Garrett identified the detective as a police officer which created a strong incentive for Garrett to destroy evidence. Therefore, we are satisfied that the warrantless entry into Garrett's apartment was justified by exigent circumstances.

## B. Entry Into the Closet

¶ 19. Garrett next claims that the search of the closet was not a lawful protective sweep. Garrett makes two contentions: (1) that the living room closet was not immediately adjoining the area of the arrest and, therefore, any search was unlawful without reasonable suspicion that the closet contained some hidden danger; and (2) that there are no specific and articulable facts that would lead a reasonably prudent officer to believe that the closet contained an individual posing a danger. The State responds that the police were reasonable in believing that someone could have been hiding in the closet based on the size of the closet, the position of the couch in front of the closet, and because the closet door was slightly ajar.

¶ 20. In denying Garrett's motion to suppress, the trial court considered the facts and found that it would be reasonable for a police officer, in the living room soon after the arrest, to suspect that a person was hiding in the closet after seeing the closet door ajar with a sofa pulled in front of it. The trial court concluded that it was reasonable for the officer to exercise precaution and look in the closet. We agree.

¶ 21. In *Maryland v. Buie*, 494 U.S. 325 (1990), the Supreme Court defined a "protective sweep" as a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id.* at 327. The Court held that, as an incident to the arrest, the officers may "without probable cause or reasonable suspicion, look in closets and other spaces *immediately adjoining* the place of arrest from which an attack could be immediately launched." *Id.* at 334 (emphasis added). Beyond that limited cursory inspection, however, the police may conduct a quick and limited search of additional spaces in the premises only if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

¶ 22. In determining whether a police officer's conduct is reasonable, we must examine all the facts and circumstances confronted by the police at the time the sweep was conducted. *State v. Blanco*, 2000 WI App 119, ¶ 26, 237 Wis. 2d 395, 614 N.W.2d 512. In addition, the search must be limited in time and space in that the sweep must "last[] no longer than is necessary to dispel the reasonable suspicion of danger" and "may extend only to a cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335–36. Therefore, the protective sweep is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327.

¶ 23. In the present case, we must first determine whether the living room closet is immediately adjoining the area of the arrest. We addressed a similar factual situation in *State v. Kruse*, 175 Wis. 2d 89, 499 N.W.2d

185 (Ct. App. 1993), where Kruse's bedroom closet was searched during a protective sweep after Kruse was arrested in the living room. *Id.* at 92–93. Based on the fact that the bedroom closet in *Kruse* was located down a hallway and around a corner from where Kruse was arrested, we concluded that "the bedroom closet was not in the vicinity of the place of arrest and therefore not subject to a *Buie* protective search without reasonable suspicion." *Id.* at 95.

¶ 24. Here, the trial court found that the living room closet was thirty-two to forty feet away from the place of Garrett's arrest, the back bedroom. Detective Kaltenbrun testified that the back bedroom was down a hallway and around a corner from the living room closet that he ultimately searched. In fact, the detective further testified that he was located in the living room when Garret was handcuffed and he could not observe the arrest. Based on these facts, we conclude that the living room closet, which was at least thirty-two feet from the arrest area and separated by a hallway and a wall, was not in the vicinity of the place of arrest and, therefore, not subject to a protective sweep without a reasonable suspicion that the closet harbored a dangerous individual. *See id.* at 96–97.

¶ 25. The question in the present case then becomes whether there are articulable facts which would warrant a reasonably prudent officer's belief that Garrett's closet harbored an individual posing a danger to the officers. *See Buie*, 494 U.S. at 334. In addition, we must determine if the search was narrowly confined to places where such an individual could be found and did not last any longer than was necessary to eliminate the possibility of danger. *Id.* at 327.

¶ 26. We recently addressed the protective sweep doctrine in *State v. Blanco*, 2000 WI App 119, ¶ 26, 237 Wis. 2d 395, 614 N.W.2d 512. Blanco was arrested in a friend's apartment and the police proceeded to search a crawl space in the bathroom which was secured by four screws. *Id.* at ¶ 5. Upon removing a board covering the crawl space, a bag of marijuana fell on the officer's head. *Id.* In evaluating the reasonableness of the search, we considered a number of facts, including: (1) Blanco's outstanding warrant was for attempted homicide while armed; (2) the officers had heard a great deal of noise and activity coming from the bathroom; (3) the police officer's knowledge that the crawl space was big enough for a person to hide in; (4) from the condition of the paint around the panel's screws, it appeared that the panel had recently been removed; and (5) the police did not come into the apartment and start rummaging around looking for contraband in other closets, drawers, or cupboards. *Id.* at ¶¶ 22, 29. In *Blanco*, the search was upheld as a lawful protective sweep based on the totality of these circumstances, coupled with the trial court's judgment of the credibility of the police officer's testimony regarding the surrounding facts. *Id.* at ¶ 29 n.4.

¶ 27. The facts surrounding the instant case include: (1) the officers were investigating a drug transaction; (2) information consisting of people buying drugs from Garrett's building suggested drug dealing was occurring; (3) the closet door was slightly ajar; (4) the closet was large enough to hide a person; (4) the suspect had just fled from the living room, where the closet was located; and (5) the space between the couch and the door was large enough for a person to gain access to the closet. Based on these facts, Detective

Kaltenbrun testified that he had a reasonable suspicion that the closet harbored a dangerous individual. We conclude that the protective sweep of the closet was reasonable in that Detective Kaltenbrun could have reasonably believed that an individual was hiding in the closet, the search was narrowly confined to the closet where such an individual could be found, and the sweep was narrowly confined to a brief visual inspection of the closet.

¶ 28. For all of the above stated reasons, we affirm the trial court's decision to deny the motion to suppress, the motion for reconsideration, and the motion for postconviction relief.

*By the Court.*—Judgment and orders affirmed.