STATE of Wisconsin, Plaintiff-Appellant,

v.

Harold C. MIKKELSON, Defendant-Respondent.

Court of Appeals

*No. 01–2207. Submitted on briefs April 9, 2002.—Decided May 7, 2002.*

2002 WI App 152

(Also reported in 647 N.W.2d 421.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William L. Gansner*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael Yovovich*, assistant state public defender, Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. The State appeals an order granting Harold Mikkelson's motion to suppress evidence obtained from within his house. The State argues that: (1) the police had probable cause to arrest Mikkelson for his conduct outside the house and were justified to enter the house without a search warrant under the hot pursuit exception to the Fourth Amendment; and (2) the court's ruling violates *State v. Hobson*, 218 Wis. 2d 350, 577 N.W.2d 825 (1998), by granting a privilege to assault a police officer whenever a defendant believes his or her arrest is illegal. We disagree and affirm the order.

## BACKGROUND

¶ 2. On the night of August 4, 2000, Superior police officer Bonita Jo Johnson was patroling a neighborhood in Superior. She observed a male, later determined to be Mikkelson, at the rear of a residence moving between a car and a garage. Johnson thought the movements were suspicious. Johnson pulled her squad car into an alley and shined her light on the scene. She saw a figure duck down inside a different minivan parked in the driveway of the residence.

¶ 3. Johnson approached the van and asked Mikkelson for his name and an explanation for his actions. Mikkelson responded that he lived there and was doing nothing wrong. When Johnson asked what he was doing in the van, Mikkelson pushed her away and walked toward the house. Johnson ordered him to stop but Mikkelson kept walking. Johnson reached out to grab Mikkelson's arm and Mikkelson again pushed her away. Johnson then sprayed Mikkelson with chemi-

cal spray.[1] While she radioed for backup, Mikkelson was let into the house by an older man.

¶ 4. Johnson knocked on the door, and the older man opened the door and identified himself as Mikkelson's father. He confirmed that his son lived there. Johnson told the father that she needed to speak with his son. The father told Johnson that he would get his son, then turned and shut the door. When no one returned, Johnson went to a side door where Mikkelson's mother answered. By this time backup had arrived.

¶ 5. According to Johnson, she received permission from the mother to enter the house. As Johnson stepped into the house, she could see the father motioning that Mikkelson was down in the basement. Both parents testified that they never gave permission to the officers to enter the home and that the father told them to leave because they did not have a warrant. A neighbor, who was observing from her window, testified that she did not see anything resembling consent by Mikkelson's parents.

¶ 6. After gaining entry into the home, several officers went into the basement and attempted to arrest Mikkelson. During the arrest, Mikkelson allegedly punched an officer. He was charged with a misdemeanor count of obstructing an officer for his actions outside the house, contrary to Wis. Stat. § 946.41(1) and a felony count of battery to a police officer, contrary to Wis. Stat. § 940.20(2), for his actions in the basement.

¶ 7. Mikkelson moved to suppress all evidence the police obtained inside the house. The State argued that

---

[1] Johnson testified that after Mikkelson pushed her away and resisted her efforts to stop him, she decided to arrest Mikkelson for obstructing an officer.

Mikkelson's parents gave the officers consent to enter the house. In the alternative, the State argued that even if there was no consent, the court could not suppress the evidence in light of *Hobson*, which abrogated the previously recognized right to forcibly resist an unlawful arrest. *Hobson*, 218 Wis. 2d at 353.

¶ 8. At the suppression hearing, three police officers who had been at Mikkelson's home testified that they were given consent to enter the home. However, none of the officers testified about the events that took place in the basement during the arrest. The only testimony about those events came from Mikkelson's father and aunt, who had been present during the arrest, on cross-examination. Both testified that the officers used unreasonable force to subdue and arrest Mikkelson.

¶ 9. The circuit court found that the police did not receive consent from the parents to enter the house. The court also rejected the State's *Hobson* argument. As a result, the court suppressed the evidence of everything that happened in the house.

STANDARD OF REVIEW

¶ 10. In reviewing a circuit court's order granting or denying a motion to suppress evidence, the court's findings of evidentiary or historical fact will be upheld unless they are clearly erroneous. *State v. Matejka*, 2001 WI 5, ¶ 16, 241 Wis. 2d 52, 621 N.W.2d 891. However, whether the court's findings of fact pass statutory or constitutional muster is a question of law that this court reviews independently. *Id.*

DISCUSSION

¶ 11. On appeal, the State does not contest the circuit court's finding of no consent to enter the house.

Nevertheless, the State argues that the circuit court erred because: (1) the police had probable cause to arrest Mikkelson for his conduct outside the house and were justified in entering the house because they were in hot pursuit; and (2) the court's ruling violates *Hobson* by granting a privilege to assault a police officer whenever a defendant believes his or her arrest is illegal.

## I. PROBABLE CAUSE AND HOT PURSUIT

¶ 12. The State argues that the police had probable cause to arrest Mikkelson outside the house and that they were entitled to enter the house without a warrant in order to arrest Mikkelson because they were in hot pursuit.

¶ 13. Mikkelson argues that the State has waived its probable cause and hot pursuit arguments by not raising the issues at the suppression hearing. We agree.

¶ 14. "The waiver rule serves several important objectives. Raising issues at the [circuit] court level allows the . . . court to correct or avoid the alleged error in the first place, eliminating the need for appeal." *State v. Huebner*, 2000 WI 59, ¶ 12, 235 Wis. 2d 486, 611 N.W.2d 727. "It also gives both parties and the . . . judge notice of the issue and a fair opportunity to address the objection." *Id.* "Furthermore, the waiver rule encourages attorneys to diligently prepare for and conduct trials." *Id.* "Finally, the rule prevents attorneys from sandbagging errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *Id.* "For all of these reasons, the waiver rule is essential to the efficient and fair conduct of our adversary system of justice." *Id.*

¶ 15. By only arguing at the suppression hearing that Mikkelson's parents had given consent to enter the house, the State obviated any need for Mikkelson to present witnesses about probable cause and hot pursuit. Further, without being put on notice that the State was relying on more exceptions than just consent, the court did not have an opportunity to clarify the record regarding those exceptions. It would be unfair to the court and to Mikkelson to allow the State to rely exclusively on a different exception to the warrant requirement than what was argued at the suppression hearing. The waiver rule is applied equally to both a defendant and the State when they are the appellants. *State v. Bollig*, 222 Wis. 2d 558, 564, 587 N.W.2d 908 (Ct. App. 1998).

¶ 16. Further, the State has not filed a reply brief refuting Mikkelson's waiver argument. An argument asserted by a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted. *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). Accordingly, we conclude that the State has failed to preserve for appeal its probable cause and hot pursuit arguments.

¶ 17. Even if we were to consider the State's argument, we would reject it. An arrest made in hot pursuit constitutes an exigent circumstance required for a warrantless entry. *State v. Smith*, 131 Wis. 2d 220, 229, 388 N.W.2d 601 (1986). Relying on *United States v. Santana*, 427 U.S. 38, 43 (1976), the State argues that the police were entitled to enter the house and arrest

Mikkelson because they were in hot pursuit.[2] *Santana* holds that a suspect may not defeat an arrest that has been set in motion in a public place by escaping to a private place. *Id.* However, in *Welsh v. Wisconsin*, 466 U.S. 740, 749–51 (1984), the Supreme Court limited *Santana* to the hot pursuit of fleeing felons. Also, the court in *Payton v. New York*, 445 U.S. 573 (1980), stated that *Santana* was limited to in-home arrests of felons when police have probable cause and exigent circumstances. The police were pursuing Mikkelson for obstructing an officer, a misdemeanor. *See* Wis. Stat. § 946.41. Therefore, *Santana* does not permit the warrantless entry into Mikkelson's house.

II. Illegal Arrest

¶ 18. The State argues that the circuit court's order suppressing all evidence from within the house violates *Hobson* by granting a privilege to assault a police officer whenever a defendant believes his or her arrest is illegal. In *Hobson*, 218 Wis. 2d at 381–82, our supreme court held that in the absence of unreasonable force by the police, the court was abrogating the common-law defense of forcibly resisting an unlawful arrest.

¶ 19. According to the State, there is no question that Mikkelson committed the crime of battery to a police officer and that Mikkelson's arrest was "peaceful until his own behavior required forcible action by the police." The State relies on an officer's testimony at the

---

[2] The State's argument is premised on the existence of probable cause to arrest Mikkelson outside the house. However, in light of our holding, it is unnecessary to address whether probable cause existed. We decide cases on the narrowest grounds presented. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

preliminary hearing to argue that the police used reasonable force to arrest Mikkelson. The officer testified that Mikkelson was extremely agitated, refused to calm down, and ripped his shirt off and challenged the officers to a fight. The officers then sprayed him with chemical spray, but Mikkelson continued to challenge the officers. The officers then tried to stop Mikkelson with a baton. Mikkelson lunged forward and struck one of the officers with his fist.

¶ 20. Mikkelson argues that the State is prohibited from using the preliminary hearing testimony on appeal. Mikkelson points out that the preliminary hearing was held before a different judge, and the State never introduced the officer's testimony at the suppression hearing. In fact, the State never introduced any testimony at the suppression hearing regarding what occurred in the basement. The only testimony concerning the events in the basement came from Mikkelson's father and aunt. Both testified that the police used unreasonable force.

¶ 21. We agree with Mikkelson. As indicated, the State's argument is entirely dependent on testimony that was not even presented to the circuit court at the suppression hearing. We are aware of no authority that permits an appellate court to overturn a suppression ruling based on evidence that was not part of the record at the suppression hearing.

¶ 22. Further, as stated earlier, the State has not filed a reply brief. Therefore, the State has conceded Mikkelson's argument. Accordingly, we conclude that the suppression order did not violate *Hobson*.

*By the Court.*—Order affirmed.