STATE of Wisconsin, Plaintiff-Respondent,†

v.

Dwight M. SANDERS, Defendant-Appellant.

Court of Appeals

*No. 2006AP2060–CR. Submitted on briefs April 26, 2007.
—Decided June 6, 2007.*

2007 WI App 174

(Also reported in 737 N.W.2d 44.)

† Petition to review granted 8/14/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick M. Donnelly*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Anne C. Murphy*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Dwight M. Sanders argues that the police violated his Fourth Amendment rights

163

when they pursued him into his residence in order to arrest him for obstructing an officer. We hold that the misdemeanor crime of obstructing an officer will not support a warrantless entry of a home under the hot pursuit doctrine. We further conclude that officers lacked probable cause to believe that Sanders was engaged in illegal drug activity and therefore the entry cannot be validated on those grounds. We reverse the judgment and order of the circuit court.

## *Facts*

¶ 2.  On May 6, 2005, Jorge Garcia and Hendriel Anderson, police officers for the city of Racine were dispatched to a residence based on a claim of cruelty to animals. The caller reported mistreated dogs in the backyard of the residence. When the officers arrived at the scene, they could hear a "dog yelping, crying out." The officers proceeded into the backyard where they observed four males, one of whom was Sanders, and three to four pit bulls. Garcia did not notice any mistreatment of the animals.

¶ 3.  Anderson made the initial contact with Sanders, advised him of the complaint and asked for his identification. Sanders refused to provide identification, instead explaining that he had not done anything wrong. Sanders indicated that it was his residence and that his identification was in the house. Sanders was holding folded-up paper money and a yellow-and-black canister in his hands. According to Garcia, the canister resembled containers used by drug dealers attempting to conceal illegal substances. Sanders' residence is located in a high-volume drug-trafficking area in the city, but is not a known drug house and the officers were not aware of Sanders having any history of drug trafficking.

164

¶ 4.   Anderson took out a pair of handcuffs and attempted to detain Sanders. Sanders began walking backwards, away from Anderson, and then turned and ran toward the residence. Anderson ordered him not to go into the house. Sanders disregarded the order and ran into the rear door of the residence. The officers ran after Sanders in order to take him into custody. The officers followed him through the residence until Sanders ran into a front bedroom and slammed the door and barricaded himself in the room.

¶ 5.   Within a minute or so, Sanders emerged from the bedroom and the officers took him into custody. Garcia then searched the room twice. He ultimately located the yellow-and-black canister, which was a beef jerky can, underneath the bed. Garcia found several individually packaged knotted baggies containing cocaine inside of the canister.

¶ 6.   On May 9, 2005, the State filed a criminal complaint against Sanders. The State charged Sanders with one count of obstructing an officer and one count of possession of cocaine with the intent to deliver, second offense, both as a habitual offender. Sanders filed a motion to suppress in which he contested the officers' warrantless entry into the home and the two searches of the bedroom that followed. Sanders contended that the hot pursuit exception to the warrant requirement did not authorize the officers' entry and the two subsequent searches could not be justified as protective sweeps. Following a hearing and extra briefing from the parties, the court denied the motion to suppress. Sanders pled guilty to possession of cocaine with intent to deliver as a second offense and as a habitual offender.

¶ 7.   Sanders filed a motion for postconviction relief. Sanders claimed that *State v. Mikkelson,* 2002 WI

App 152, ¶ 17, 256 Wis. 2d 132, 647 N.W.2d 421, limited the hot pursuit doctrine to the pursuit of fleeing felons and the police were pursuing him for obstructing an officer, a misdemeanor. *See* Wis. Stat. § 946.41(1) (2005–06) (classifying obstructing an officer as a misdemeanor offense).[1] Sanders maintained that because his trial counsel failed to bring the *Mikkelson* case to the circuit court's attention, his counsel was ineffective. The court denied the postconviction motion. Sanders appeals.

### *Discussion*

¶ 8.   Sanders argues that the officers' warrantless entry into his residence violated his Fourth Amendment rights because no exigent circumstances justified the entry.[2] The State first relies on the hot pursuit doctrine. The State claims that the officers had probable cause to arrest for both drug possession and obstructing an officer when they followed Sanders into his home. Sanders maintains that the State cannot rely upon the hot pursuit doctrine to support the entry because the officers did not possess probable cause to arrest for the possession of illegal substances at the time of the entry and the underlying offense for which there was probable cause, obstructing an officer, is

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] Sanders challenges the police conduct on several fronts on appeal. Because we conclude that the police entry of the residence violated Sanders' Fourth Amendment rights, we need not consider his remaining arguments concerning the two searches of the bedroom and his ineffective assistance of counsel claim. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (stating that if a decision on one point disposes of the appeal, the appellate court need not decide the other issues raised).

relatively minor.[3] The State next contends that the exigency created by the risk that Sanders would destroy evidence of the illegal substances validates the warrantless entry. Sanders responds that the officers could not have reasonably believed that evidence of the drugs would be found in his residence.

## Standard of Review

¶ 9.   "The question of whether a search or seizure is reasonable under the Fourth Amendment is a question of constitutional fact." *State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998). We uphold the circuit court's findings of evidentiary or historical facts unless those findings are clearly erroneous and then independently apply the law to those facts. *State v. Hughes*, 2000 WI 24, ¶ 15, 233 Wis. 2d 280, 607 N.W.2d 621.

## Fourth Amendment

¶ 10.   A police officer's warrantless entry into a private residence is presumptively prohibited by the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution. *Hughes*, 233 Wis. 2d 280, ¶ 17. However, this court and the United States Supreme Court have recognized exceptions to the warrant requirement where the government can show both probable cause and exigent

---

[3] The trial court determined that the crime underlying the pursuit into the home was cruelty to animals. On appeal, the State does not argue that the police officers had probable cause to arrest Sanders for cruelty to animals when they chased after him. Therefore, we need not address this crime.

circumstances that overcome the individual's right to be free from government interference. *Id.*

¶ 11.   The Fourth Amendment requires probable cause to support every search or seizure in order to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Hughes*, 233 Wis. 2d 280, ¶ 19 (citation omitted). The probable cause requirement in the arrest context protects an individual's interest in his or her personal liberty. *Id.*, ¶ 20. Probable cause to arrest exists when, at the time of the arrest, an officer has within his or her knowledge reasonably trustworthy facts and circumstances sufficient to warrant a reasonably prudent person's belief that the suspect has committed or is committing a crime. *State v. Kiekhefer*, 212 Wis. 2d 460, 484, 569 N.W.2d 316 (Ct. App. 1997). There must be more than a possibility or suspicion that the defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). This is an objective standard; the officer's subjective opinion is irrelevant. *Kiekhefer*, 212 Wis. 2d at 484.

¶ 12.   In the search context, the proper inquiry is whether evidence of a crime will be found. *Hughes*, 233 Wis. 2d 280, ¶ 21. To establish probable cause for a search, the state must show at least a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Id.*

¶ 13.   Once probable cause has been established, the State must then demonstrate exigent circum-

stances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. *State v. Kryzaniak*, 2001 WI App 44, ¶ 16, 241 Wis. 2d 358, 624 N.W.2d 389. Four factors have been identified that, when measured against the time needed to obtain a warrant, constitute the exigent circumstances required for a warrantless entry: (1) an arrest made in "hot pursuit," (2) a threat to the safety of a suspect or others, (3) a risk that evidence would be destroyed, and (4) a likelihood that the suspect would flee. *Id.* In this case, we are concerned with the first factor, hot pursuit. Hot pursuit is that circumstance where there is an "immediate or continuous pursuit of [a suspect] from the scene of a crime." *Id.*, ¶ 17 (citation omitted).

## *Hot Pursuit*

### Drug Possession

¶ 14. The State claims when the officers entered Sanders' home they possessed probable cause to believe that Sanders had engaged in illegal drug activity and that they were entitled to enter the house without a warrant in order to arrest Sanders because they were in hot pursuit. While the circumstances surrounding the police pursuit of Sanders may have supplied the officers with a reasonable suspicion that Sanders had committed a drug crime, they do not rise to the level of probable cause.

¶ 15. At the time the officers pursued Sanders into his home, the officers knew that the residence was located in an area known for drug trafficking and that Sanders was holding in his hands folded-up money and a canister that appeared to be of the type typically used

to transport drugs. Further, Sanders refused to cooperate with their investigation and retreated to the inside of his home when the police ordered him to stop. However, neither of the officers actually saw drugs on Sanders or any of the other individuals in the backyard for that matter. The officers had no prior history with Sanders and no knowledge of any previous participation in drug-related activity. The residence was not known as a drug house. Further, the canister Sanders held in his hand was a beef jerky can and the officers did not see any drugs. Given this absence of evidence specifically connecting Sanders to illegal drugs, we conclude that the officers could not have reasonably believed that Sanders was committing or had committed a drug crime.

### Obstructing an Officer

¶ 16. Sanders does not dispute the existence of probable cause to arrest him for obstructing an officer. Instead, he challenges the exigency of the circumstances. He argues that a hot pursuit entry based on the crime of obstructing an officer, a misdemeanor, does not overcome the presumption of unreasonableness accompanying warrantless home entries.

¶ 17. This court has expressed a reluctance to find exigent circumstances when the underlying offense for which there is probable cause to arrest is relatively minor. *Kryzaniak*, 241 Wis. 2d 358, ¶ 21. Our reticence stems from *Welsh v. Wisconsin*, 466 U.S. 740 (1984), in which the United States Supreme Court recognized that warrantless home invasions can only occur with the most serious of crimes. *Kryzaniak*, 241 Wis. 2d 358, ¶ 21 (citing *Welsh*, 466 U.S. at 750 n.12).

¶ 18. In *Welsh*, the defendant drove his car off the road, left the scene and walked home. *Welsh*, 466 U.S. at

170

742–43. The police verified the defendant's identity and address and, suspecting that he was intoxicated, entered his home without a warrant. *Id.* The police proceeded to arrest Welsh for drunk driving. *Id.* at 743. The State attempted to justify the entry based upon the exigency of destruction of evidence:   by the time they could obtain a warrant, Welsh's body would metabolize the alcohol, and thus destroy the evidence of his intoxication. *Id.* at 753–54.

¶ 19.   The Supreme Court found that this entry and arrest violated the Fourth Amendment. *Id.* at 754–55. The Court held:

> When the government's interest is only to arrest for a minor offense, [the presumption of unreasonableness of warrantless home entries] is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Id.* at 750. The Court's holding demonstrates that the gravity of the offense is an important factor to consider in determining whether exigent circumstances will justify the warrantless entry of a home. *See id.* The Court commented that "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.* at 753.

¶ 20.   The *Welsh* Court did not definitively say that certain categories of offenses are per se insufficiently grave to justify a warrantless entry, only that the minor, noncriminal, nonjailable traffic violation in that case (first-offense drunk driving) was so. *Hughes*, 233 Wis. 2d 280, ¶ 30. *Welsh* essentially holds that the

less significant the offense, the more significant the exigent circumstances must be in order to justify a warrantless home entry under the Fourth Amendment. *Hughes*, 233 Wis. 2d 280, ¶ 30. However, most courts addressing this issue have disallowed warrantless home arrests for nonfelonious crimes. *Welsh*, 466 U.S. at 752; *Kryzaniak*, 241 Wis. 2d 358, ¶ 22.

¶ 21.   In *Mikkelson*, 256 Wis. 2d 132, ¶ 17, we considered *Welsh* in the context of a hot pursuit for the crime of obstructing an officer. There, a police officer observed Mikkelson engage in suspicious movements at the rear of a residence. *Id.*, ¶ 2. The officer approached Mikkelson, asked for his name and an explanation for his behaviors. *Id.*, ¶ 3. Mikkelson responded that he lived at the residence and was not doing anything wrong. *Id.* When the officer inquired into his activities, Mikkelson pushed the officer away and walked toward the house. *Id.* The officer ordered Mikkelson to stop, but he kept walking toward the house. *Id.* After another failed attempt to stop Mikkelson, the officer sprayed Mikkelson with chemical spray, decided she would arrest Mikkelson for obstructing an officer and called for backup. *Id.* & n.1. While she radioed for backup, Mikkelson entered the residence. *Id.* The officers knocked on the door and then gained entry into the residence without a warrant or consent and arrested Mikkelson. *Id.*, ¶¶ 4–6, 11.

¶ 22.   On appeal, the state relied upon the hot pursuit doctrine to justify the warrantless entry. *Id.*, ¶ 12. We held that the entry violated the Fourth Amendment. *See id.*, ¶ 17. We explained that in *United States v. Santana*, 427 U.S. 38, 43 (1976), the United States Supreme Court held that a suspect could not defeat an arrest that has been set in motion in a public place by escaping to a private place. We then inter-

172

preted *Welsh* as limiting *Santana* to the hot pursuit of fleeing felons. *Mikkelson*, 256 Wis. 2d 132, ¶ 17. Because the police pursued Mikkelson for obstructing an officer, a misdemeanor, we determined they were not permitted to enter the residence without a warrant. *Id.*

¶ 23. We have a strikingly similar fact pattern in this case. As in *Mikkelson*, we have an uncooperative defendant who engaged in what officers believed was suspicious behavior. We have a defendant who, like Mikkelson, disregarded a police order to stop and proceeded into a residence. Finally, as in *Mikkelson*, the officers pursued Sanders for obstructing an officer, a misdemeanor offense. Applying *Mikkelson* and its construction of the post-*Welsh* exigent circumstances factors, we hold that the officers illegally entered Sanders' residence.

¶ 24. The State claims that *Mikkelson* does not apply. The State argues that the case did not actually involve a police chase because the police knocked on the door before gaining entry into Mikkelson's residence. We did not consider this fact consequential in *Mikkelson* nor do we here. The insignificant amount of time it took for the officer to knock and wait for an answer did not change the fact that the officer was in hot pursuit of Mikkelson.

¶ 25. The State also argues that the *Mikkelson* holding was purely dicta because we first concluded that the state had waived its hot pursuit arguments by not raising them at the suppression hearing. *Mikkelson*, 256 Wis. 2d 132, ¶ 13. However, when an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not dicta but is a judicial act of the court which it will thereafter recognize as a binding decision. *State v. Holt*,

128 Wis. 2d 110, 123, 382 N.W.2d 679 (Ct. App. 1985). After our waiver discussion in *Mikkelson*, we intentionally addressed the merits of the state's hot pursuit argument. Therefore, our discussion was not dicta and is binding on this court.

¶ 26.  The State argues that our supreme court's decision in *Hughes* validates the officers' hot pursuit entry in this case. In *Hughes*, the court held that the crime of possession of marijuana was serious enough to justify the warrantless entry of an apartment under the exigent circumstance of preventing the destruction of evidence. *Hughes*, 233 Wis. 2d 280, ¶¶ 22, 30, 39, 40. The court refused to look only to the punishment for first-offense possession of marijuana, a misdemeanor, to determine the seriousness of the crime at issue. *Id.*, ¶¶ 30, 34. Instead, the court opted for a broader approach that also considered the facts of the case that supplied the police with the probable cause to believe that the evidence of illegal drugs would be found within the apartment and the entire penalty structure for drug offenses. *Id.*, ¶¶ 34–35.

¶ 27.  In contrast to *Hughes*, we have already concluded that the State failed to establish that the police had probable cause to believe Sanders possessed illegal drugs. This suspected crime therefore cannot form the basis for the entry into Sanders' residence. Further, *Mikkelson*, which was released two years after *Hughes*, held under circumstances similar to those presented in this case that the misdemeanor of obstructing an officer was not sufficiently serious to support a warrantless entry. *Mikkelson* controls the outcome of this case.

¶ 28.  The State also cites to our supreme court's decision in *State v. Richter*, 2000 WI 58, 235 Wis. 2d 524, 612 N.W.2d 29, to support its position that the

174

officers in this case were faced with the exigent circumstances of hot pursuit. The State's reliance on *Richter* is misplaced.

■

¶ 29.   The *Richter* court held the pursuit of a suspected burglar to be continuous for purposes of the hot pursuit doctrine even though the officer himself arrived after the crime had occurred and, therefore, did not personally observe the crime or the fleeing suspect. *Id.*, ¶¶ 33, 36. Here, however, the continuity or immediacy of the officers' pursuit of Sanders is not in question. The officers were present during the crime underlying the warrantless entry, observed Sanders flee and pursued him from the scene of the crime. Rather, the issue in this case is whether the crime supporting the entry is sufficiently serious to justify a warrantless entry into a residence. In *Richter*, the crime allegedly committed was sufficiently serious—the felony crime of burglary. *Id.*, ¶ 38. As we have explained, the underlying crime in this case, obstructing an officer, will not support a warrantless entry.

### Destruction of Evidence

¶ 30.   The State contends that the warrantless entry is also justified under the third exigent circumstances factor:   a risk that evidence of drugs would be destroyed. The State claims that the officers had probable cause to search because there was a "fair probability" that the officers would find evidence of illegal drug activity in Sanders' residence.[4] *See Hughes*, 233 Wis. 2d 280, ¶ 21.

---

[4] Sanders maintains that the State waived this argument by not raising it before the trial court. We choose not to apply waiver to the State's argument and address it on the merits. *See State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App.

¶ 31.   The State rests its argument on *Hughes* and *State v. Garrett*, 2001 WI App 240, 248 Wis. 2d 61, 635 N.W.2d 615, two exigent circumstances cases in which we held that there was a fair probability that evidence of drugs would be found when the police made their warrantless entries into the defendants' apartments. *Hughes* and *Garrett*, however, presented vastly different circumstances than those in the matter at hand.

¶ 32.   In both *Hughes* and *Garrett*, the police officers actually detected the presence of drugs within the residence before they entered without a warrant. In *Hughes*, the officers smelled the "unmistakable odor of marijuana coming from [the defendant's] apartment." *Hughes*, 233 Wis. 2d 280, ¶¶ 5, 22. In *Garrett*, the officers knew that an individual had purchased cocaine from inside of the defendant's apartment and observed the defendant standing in the doorway "holding a clear plastic bag containing a white substance that the officer believed to be cocaine." *Garrett*, 248 Wis. 2d 61, ¶¶ 2–3. Furthermore, in both *Hughes* and *Garrett*, the defendants lived in apartment complexes with heavy drug activity. *Hughes*, 233 Wis. 2d 280, ¶¶ 2, 3; *see Garrett*, 248 Wis. 2d 61, ¶¶ 2–3. Here, as we have explained, the officers had no such evidence of the presence of drugs either on Sanders' person or, more importantly for this inquiry, in his residence. Furthermore, the officers had no information linking Sanders' residence to previous drug activity. Sanders' failure to cooperate with police and his holding a canister in one hand and money in the other, without more direct evidence connecting drug

1985) ("The very policies of judicial efficiency which underlie the general waiver rule argue against the rule's being applied to deny the respondent the right to assert a ground for upholding the trial court's decision.").

activity to the residence, falls far short of raising a "fair probability" that evidence of illegal drug activity would be found in Sanders' home. The State cannot justify the police entry on the third exigent circumstances factor.

### *Conclusion*

¶ 33. *Mikkelson* teaches that the misdemeanor crime of obstructing an officer cannot justify the warrantless entry by the police into a residence under the exigent circumstances of hot pursuit. Because the officers lacked probable cause to believe Sanders had committed or was committing any other crime or that they would find any evidence of a crime in Sanders' residence, their entry into his residence violated his Fourth Amendment rights.

*By the Court.*—Judgment and order reversed.

¶ 34. BROWN, J. (*concurring*). I read *Welsh v. Wisconsin*, 466 U.S. 740 (1984), to say that neither exigent circumstances nor hot pursuit justify entry into a home where the nature of the offense is a nonjailable, civil forfeiture traffic violation. That is all. Nowhere did the *Welsh* court say that its holding applied to misdemeanors as well. The Court did say that the gravity of the underlying offense is a consideration and did also say that the circumstances are more clearly exigent when the offense is a "serious crime." *Id.* at 752–53. But the court stopped short of drawing a bright line.

¶ 35. That bright line was drawn by a panel of this court in *State v. Mikkelson*, 2002 WI App 152, 256 Wis. 2d 132, 647 N.W.2d 421. The *Mikkelson* court determined that warrantless entry into a home on grounds of exigent circumstances or hot pursuit is reserved for felonious crimes. *Id.*, ¶ 17. I disagree with

that holding and, should there be a petition to review this case, I urge our supreme court to take this case up and review *Mikkelson*.

¶ 36. It is my view that the *Welsh* court was mesmerized by what it considered to be the unusual facts in that case. The pursuit of Welsh into his home was a result of his alleged driving while intoxicated, which the Court pointed out was a "noncriminal, civil forfeiture offense for which no imprisonment is possible." *Welsh*, 466 U.S. at 754. The Court basically opined that if the State of Wisconsin thought so little of first-offense driving while intoxicated that it would not even impose jail time, then it certainly was not sufficient grounds for invading the privacy of a home without a warrant. *See id.* at 754 n.14. The Court said that "in the circumstances presented by this case" it had "no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses." *Id.* at 749 n.11.

¶ 37. I am convinced that the *Mikkelson* court misread *Welsh* to say otherwise. The *Mikkelson* court seized on a string cite in *Welsh* to *United States v. Santana*, 427 U.S. 38, 42–43 (1976), where, in parentheses following the citation, the Court noted that *Santana* involved "hot pursuit of a fleeing felon." *Welsh*, 466 U.S. at 750; *Mikkelson*, 256 Wis. 2d 132, ¶ 17. But the *Santana* reference was just part of the Court's long explanation that, to date, the Court had had occasion to decide hot pursuit and exigent circumstances cases only when they involved felony arrests. As footnote 11 points out, the Court reserved for another day whether warrantless entry could also be allowed for certain minor offenses.

¶ 38. It is my opinion that there are certain misdemeanors which our legislature has deemed serious.

The legislature has divided misdemeanors into classes. The Class A misdemeanors are obviously considered to be more serious than the Class B and C misdemeanors because penalties are greater. I note that both obstructing an officer contrary to Wis. Stat. § 946.41(1) and treating an animal in a cruel manner, either intentionally or negligently, are Class A misdemeanors. Thus, the legislature has made a policy choice that, while violating either of these criminal statutes does not expose a person to prison, it certainly exposes the person to serious jail time. It is my view that, at the very least, the governmental interest in pursuing those who have violated Class A misdemeanors outweighs the privacy interests involved. I can certainly understand if a court refuses to approve such a pursuit for a Class B misdemeanor like disorderly conduct or a Class C misdemeanor such as loitering by a prostitute on the street or where intoxicating liquors are sold. But Class A misdemeanors like battery, repeat drunk driving offenses, obstructing—and yes, animal abuse—are very serious in the minds of Wisconsin's citizenry. I do not read *Welsh* the way the *Mikkelson* court has read it.[1]

¶ 39. Having said that, I am bound by *Mikkelson* because *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), so mandates. For that reason, I concur with the lead opinion.

¶ 40. One more thing. I wholeheartedly agree with the majority opinion's rejection of the State's

---

[1] I note that several cases in other jurisdictions have interpreted *Welsh v. Wisconsin*, 466 U.S. 740 (1984), the way I do. I will not indulge in an endless display of string cites, but I will cite a few. *See State v. Paul*, 548 N.W.2d 260 (Minn. 1996); *State v. Lamont*, 631 N.W.2d 603 (S.D. 2001); *People v. Mendez*, 948 P.2d 105 (Colo. Ct. App. 1997), *aff'd*, 986 P.2d 275 (Colo. 1999).

argument that we need not follow *Mikkelson* because it is dicta. The State seems to think that if a narrower holding in the decision can be found, anything else written by the court on another ground is dicta. That is nonsense. First, courts can and often do give alternative reasons for their decisions. Alternative rationales are not dicta. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*."). Second, courts do not write just to pass the time away. We write because we have something that needs to be said. When we intentionally take something up, research it and provide a reasoned explication of what we want to say, it is for transparency purposes:    it shows the public the factors that played an important part in the decision. It also shows the results of the collegial give-and-take that occurred during the decision process. And it shows that the court means to mark the law on a subject. Third, the old-world view that a dictum is a statement in an opinion not necessary to the decision of the case is, at its core, absurd. Taken to its logical end, the only statement in an appellate opinion strictly necessary to the decision is the order of the court. As one commentator has noted, a "quibble like this shows how useless the definition is." *Dictum Revisited*, 4 STAN. L. REV. 509, 509 (1952).

¶ 41.    The term "dicta," in my view, is often too broadly defined, usually by a lawyer who is searching for a way not to be bound by a prior published decision. But the term should be limited to those situations where a court notes, in passing, that a certain issue is lurking in the background, gives its off-the-cuff opinion without analysis and leaves it at that. That is what dicta is. Even though I disagree with *Mikkelson*, its discussion of *Welsh* was certainly not dicta. The panel

zeroed in on *Welsh*, interpreted it and set a bright line rule. If the State disagrees with *Mikkelson*, and it obviously does, its recourse is to petition for review and ask the supreme court to overrule *Mikkelson*. But it should not try to pass it off as dicta.