VILLAGE OF LITTLE CHUTE, Plaintiff-Respondent,

v.

Todd A. WALITALO, Defendant-Appellant.†

Court of Appeals

*No. 01–3060. Submitted on briefs June 7, 2002.—Decided July 2, 2002.*

2002 WI App 211

(Also reported in 650 N.W.2d 891.)

† Petition to review denied 9-26-02.

1033

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark J. McGinnis*, Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.[1]    Todd Walitalo appeals his judgment of conviction for operating a motor vehicle while under the influence of an intoxicant, first offense, contrary to WIS. STAT. § 346.63(1)(a). Walitalo argues that his consent to submit to a blood test was coerced.[2]

---

[1] Originally assigned as a one-judge appeal, this case was reassigned to a three-judge panel on June 20, 2002. *See* WIS. STAT. RULE 809.41(3).

[2] Walitalo makes two additional arguments. First, he argues that a warrant was required to secure a blood sample because

He contends that the threatened sanction of a loss of driving privileges constitutes a coercive measure that invalidates his consent for Fourth Amendment purposes. *See* Wis. Stat. § 343.305. We disagree and affirm the conviction.

## BACKGROUND

¶ 2.    The following facts are stipulated. At approximately 2:14 a.m. on March 16, 2001, Walitalo was arrested for OWI. The arresting officer read Walitalo the informing the accused form pursuant to Wis. Stat. § 343.305. Thereafter, Walitalo submitted to the drawing of a blood sample. The blood test revealed an alcohol concentration of .142%.

¶ 3.    Walitalo moved to suppress evidence. He argued that his consent, through the implied consent law, was coerced. The trial court denied the motion. Walitalo was found guilty after a bench trial on the stipulated facts.

---

police could have utilized a breath test. Because we conclude that Walitalo's consent was voluntary, we do not address this argument. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

Second, Walitalo argues that the blood draw could not be lawfully analyzed without securing a warrant because his consent applied only to the draw. In *State v. VanLaarhoven*, 2001 WI App 275, ¶ 16, 248 Wis. 2d 881, 637 N.W.2d 411, we held that the examination of a blood sample seized pursuant to the warrant requirement or an exception to the warrant requirement is an essential part of the seizure and does not require a separate judicially authorized warrant.

## STANDARD OF REVIEW

¶ 4.   When we review a motion to suppress evidence, we uphold the trial court's findings of fact unless they are clearly erroneous. *State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539 (Ct. App. 1996). However, the application of constitutional principles to those facts is a question of law that we decide without deference to the court's decision. *State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47 (Ct. App. 1995). Further, "the constitutional significance of the undisputed facts regarding the issue of consent must receive independent, appellate review." *State v. Johnson*, 177 Wis. 2d 224, 233, 501 N.W.2d 876 (Ct. App. 1993).

## DISCUSSION

¶ 5.   Under WIS. STAT. § 343.305, drivers in Wisconsin are deemed to have consented to the testing of their blood, breath or urine for alcohol concentration, and if a driver refuses to submit to a lawful request for testing, his or her driving privileges may be revoked. *See* WIS. STAT. §§ 343.305(2) and (10).

¶ 6.   Walitalo argues that his consent to submit to a blood test was coerced.[3] He contends that the threatened sanction of lost driving privileges constitutes a

---

[3] Walitalo's argument indirectly attacks the constitutionality of WIS. STAT. § 343.305. To that extent, we could decline to address it because the record does not reflect that Walitalo notified the attorney general. *See Estate of Fessler v. William B. Tanner Co.*, 100 Wis. 2d 437, 441–44, 302 N.W.2d 414 (1981). However, because he affirmatively states that he is not attacking the statute's constitutionality, we address his argument as he frames it:   Whether he was coerced into submitting to a blood test.

coercive measure that invalidates his consent for Fourth Amendment purposes. Walitalo does not allege that the arresting officer made any specific threats or applied coercion beyond what Walitalo claims arises under WIS. STAT. § 343.305.

¶ 7.   Consent to a search is a well-settled exception to the Fourth Amendment requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "[A] warrantless search conducted pursuant to consent which is 'freely and voluntarily given' does not violate the Fourth Amendment." *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998) (citation omitted). "We independently apply constitutional principles to the facts as found to determine whether the standard of voluntariness has been met." *State v. Xiong*, 178 Wis. 2d 525, 531, 504 N.W.2d 428 (Ct. App. 1993).

¶ 8.   To determine whether Walitalo voluntarily consented to the blood test, we engage in a two-step analysis. *Phillips*, 218 Wis. 2d at 196–97. First, we must determine whether Walitalo, in fact, consented to the blood draw. *See id.* Walitalo does not contest the fact that he consented to the blood draw; rather, he argues that the critical question is whether the police coerced that consent through use of the implied consent law. Therefore, we will proceed directly to the second step of the analysis.

¶ 9.   The second step requires us to examine whether Walitalo's consent was voluntarily given. *Id.* at 197. The presence or absence of actual coercion or improper police practices is the focus of the inquiry

because it is determinitive on the issue of whether the consent was the product of a "free and unconstrained will, reflecting deliberateness of choice." *State v. Clappes*, 136 Wis. 2d 222, 236, 401 N.W.2d 759 (1987) (citation omitted). The State bears the burden of proving by clear and convincing evidence that Walitalo's consent was voluntary.[4] *See Phillips*, 218 Wis. 2d at 197.

¶ 10.   It is undisputed that the arresting officer did not make any threats or apply any coercion beyond what Walitalo claims arises under Wis. Stat. § 343.305. According to Walitalo, the fact that he was forced to choose between the loss of his driving privileges and submission to a chemical test amounted to coercion.

¶ 11.   However, the arresting officer, by reading the informing the accused form, simply stated the truth:   If Walitalo refused to submit to a chemical test, his driving privileges would be revoked. This statement did not involve any deceit or trickery, but instead accurately informed Walitalo of his precise legal situation. *See* 3 Wayne R. LaFave, Search and Seizure, § 8.2(c) at 653–52 (3d ed. 1996). While police cannot use deceit or trickery, they are entitled to make true statements. *Gautreaux v. State*, 52 Wis. 2d 489, 494, 190 N.W.2d 542 (1971). Had Walitalo refused to submit to a blood test, he would have been subject to the penalties under Wis. Stat. § 343.305(10). Because there was no actual coer-

---

[4] The State argues that the burden was on Walitalo to establish the unconstitutionality of the implied consent law. However, Walitalo does not overtly challenge the constitutionality of the implied consent law. Instead, he argues that this is only a challenge to a search of his blood.

cion or improper police conduct, we conclude that Walitalo's consent was voluntary.

*By the Court.*—Judgment affirmed.