STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Jacob J. FAUST, Defendant-Respondent.

Supreme Court

*No. 03–0952–CR. Oral argument April 6, 2004.—Decided July 2, 2004.*

2004 WI 99

(Also reported in 682 N.W.2d 371.)

BRADLEY and PROSSER, J.J., join.
PROSSER, J., dissents.
ABRAHAMSON, C.J., and BRADLEY, J., join.

For the plaintiff-appellant-petitioner the cause was argued by *Mary T. Wagner* and *Joseph DeCecco,* with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

For the defendant-respondent there was a brief by *Stephen M. Seymour,* Sheboygan, and oral argument by *Stephen M. Seymour.*

¶ 1. JON P. WILCOX, J. The State appeals from a

published court of appeals decision, *State v. Faust*, 2003 WI App 243, 267 Wis. 2d 783, 672 N.W.2d 97, which affirmed an order of the Sheboygan County Circuit Court, Gary J. Langhoff, Judge, granting the defendant's motion to suppress the results of a forced blood draw taken from him that indicated he was operating a motor vehicle with a prohibited alcohol concentration.

## I. ISSUE

¶ 2. The issue presented is whether, under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution, exigent circumstances exist for a nonconsensual warrantless blood draw after the police have obtained what the arresting officer believes to be a voluntary, satisfactory, and useable chemical breath test indicating that the individual arrested was operating a motor vehicle with a prohibited level of alcohol concentration.[1]

¶ 3. For the reasons discussed below, we reaffirm that the rapid dissipation of alcohol in the bloodstream of an individual arrested for a drunk driving related offense constitutes an exigency that justifies the warrantless nonconsensual test of that individual's blood, so long as the test satisfies the four factors enumerated in *State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993). We hold that the presence of one presumptively valid chemical sample of the defendant's breath does not extinguish the exigent circumstances justifying a warrantless blood draw. The nature of the evidence sought—that is, the rapid dissipation of alcohol

---

[1] We do not address whether exigent circumstances would exist if the first test indicates that the defendant's blood alcohol concentration is within the legal limits.

187

from the bloodstream—not the existence of other evidence, determines the exigency. Because exigent circumstances were present in this case and the blood test satisfied the test we set forth in *Bohling,* we reverse the decision of the court of appeals.

## II. FACTUAL BACKGROUND

¶ 4. The operative facts of this case are undisputed. On February 19, 2002, Officer James Olsen of the Sheboygan Police Department was on routine patrol and was inspecting the license plates of vehicles parked behind a local tavern. Upon checking the plates of a 1998 Chevrolet coupe, Officer Olsen discovered that the plates were registered to an Audi coupe. A short time thereafter, Officer Olsen observed the vehicle leave the parking lot. Officer Olsen initiated a routine traffic stop, and the driver of the vehicle, the defendant, identified himself as one Jacob J. Faust. Officer Olsen noticed a "strong odor of intoxicants" emanating from the vehicle and observed that Faust was slurring his speech and exhibited bloodshot, glassy eyes. Upon questioning, Faust indicated to Officer Olsen that he had consumed "five brandies" before driving.

¶ 5. Officer Olsen thereafter administered a field sobriety test that Faust failed to successfully complete. Faust then voluntarily submitted to a preliminary breath test under Wis. Stat. § 343.303 (2001–02),[2] the result of which indicated Faust possessed an alcohol

---

[2] Section 343.303 states, in pertinent part, that "[t]he result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3)."

concentration of 0.13.[3] Officer Olsen placed Faust under arrest and transported him to police headquarters. Upon arriving, Faust consented to provide a sample of his breath for chemical analysis. The results of the breathalyzer indicated that Faust possessed an alcohol concentration of 0.09 grams of alcohol per 210 liters of breath. Officer Olsen then performed a search of Faust's criminal driving record, the result of which indicated that Faust had two prior convictions for operating a motor vehicle while intoxicated. As an individual with two or more prior convictions for operating a motorized vehicle while intoxicated, Faust was subject to the prohibited alcohol concentration of 0.08. Wis. Stat. § 885.235(1g)(cd).

¶ 6. Officer Olsen then requested that Faust provide a blood sample. After Officer Olsen read Faust the Informing the Accused form,[4] Faust refused to submit to the blood test without giving any reason. Officer Olsen then issued a Notice of Intent to Revoke Faust's license for refusing the blood test.[5] Faust was transported to the hospital where, following routine procedures, a phlebotomist administered the blood test. The result from the blood test indicated that Faust possessed a blood alcohol concentration of 0.1 grams of alcohol per 100 milliliters of blood. Officer Olsen did not

All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[3] " 'Alcohol concentration' means the number of grams of alcohol in 100 milliliters of a person's blood or the number of grams of alcohol in 210 liters of a person's breath." Wis. Stat. § 885.235(1)(a).

[4] *See* Wis. Stat. § 343.305(4).

[5] *See* Wis. Stat. § 343.305(9)(a).

request a drug analysis of Faust's blood sample. It is undisputed that Officer Olsen at no time sought a warrant for the blood test.

## III. PROCEDURAL POSTURE

¶ 7. On March 7, 2002, the State filed a criminal complaint against Faust, alleging violations of Wis. Stat. § 346.63(1)(a) (operating while intoxicated) and Wis. Stat. § 346.63(1)(b) (operating with a prohibited alcohol concentration). On October 15, 2002, Faust filed a motion to suppress the results of the blood test, arguing that the warrantless test was taken in violation of the United States and Wisconsin Constitutions because exigent circumstances did not exist due to the fact that the arresting officer already had obtained what he believed to be a voluntary and sufficient breath test that indicated Faust's level of intoxication was in excess of the legal limit. At the motion hearing, Officer Olsen indicated that while it was not department procedure to request a blood test in all drunken driving cases, he sought a blood test for the purpose of gathering additional evidence because the previous two tests were very near the legal limit. Officer Olsen also testified that at the time the breathalyzer was administered, he believed it to be a voluntary and satisfactory test. The circuit court granted Faust's motion to suppress on February 25, 2003, concluding that "exigent circumstances did not exist to justify the warrantless taking of the Defendants blood."

¶ 8. The court of appeals, based on our decision in *State v. Krajewski,* 2002 WI 97, 255 Wis. 2d 98, 648 N.W.2d 385, affirmed the order of the circuit court. *Faust,* 267 Wis. 2d 783, ¶ 1. In *Krajewski,* this court held:

190

> a warrantless nonconsensual blood draw from a person arrested on probable cause for a drunk driving offense is constitutional based on the exigent circumstances exception to the warrant requirement of the Fourth Amendment, even if the person offers to submit to a chemical test other than the blood test chosen by law enforcement, provided that the blood draw complies with the factors enumerated in *Bohling.*

*Krajewski,* 255 Wis. 2d 98, ¶ 3. However, we also stated in *Krajewski* that "[t]he exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken." *Id.,* ¶ 40. The court of appeals concluded that this sentence from *Krajewski* compelled the conclusion that "once an individual arrested on probable cause for OWI has provided a satisfactory and useable chemical test, the exigent circumstances justifying a warrantless and nonconsensual blood draw no longer exist." *Faust,* 267 Wis. 2d 783, ¶ 1. In a concurring opinion, Judge Neal P. Nettesheim stated that although he felt bound by this sentence from *Krajewski,* the remainder of the analysis in *Krajewski* contradicted this isolated passage. *Faust,* 267 Wis. 2d 783, ¶¶ 18–21 (Nettesheim, J. concurring).

## IV. STANDARD OF REVIEW

¶ 9. There are no genuine issues of material fact for the purposes of this appeal. Whether a nonconsensual warrantless blood draw taken to obtain evidence of a driver's blood alcohol concentration following an arrest falls within the exigent circumstances exception to the warrant requirement of the state and federal constitutions is a question of law that this court reviews de novo. *Krajewski,* 255 Wis. 2d 98, ¶ 17.

## V. ANALYSIS

### A. Exigent Circumstances

¶ 10. We begin our analysis by reiterating some basic constitutional principles applicable to the case at bar. Both Article I, Section 11 of the Wisconsin Constitution and the Fourth Amendment of the United States Constitution "guarantee citizens the right to be free from " 'unreasonable searches.' " *Bohling,* 173 Wis. 2d at 536.[6] A "compelled intrusion[ ] into the body for blood to be analyzed for alcohol content" constitutes a search under the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 767–68 (1966).

¶ 11. Subject to a few well-delineated exceptions, warrantless searches are deemed per se unreasonable under the Fourth Amendment. *Bohling,* 173 Wis. 2d at 536 (quoting *State v. Murdock,* 155 Wis. 2d 217, 227, 455 N.W.2d 618 (1990)). It is clear that "[a] governmental search based on 'exigent circumstances,' like a search incident to an arrest, is a well-established exception to the warrant requirement." *Id.* at 537. Exigent circumstances are present so as to justify a search in the absence of a warrant where there is a threat that "evidence will be lost or destroyed if time is taken to obtain a warrant." *Id.* at 537–38.

---

[6] "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution are virtually identical. Both establish the right of persons to be secure from unreasonable searches and seizures. Consequently, this court interprets the two constitutional provisions in concert." *State v. Krajewski,* 2002 WI 97, ¶ 18 n.9, 255 Wis. 2d 98, 648 N.W.2d 385.

¶ 12. The test for whether exigent circumstances are present is an objective one, *id.* at 538, and inquires into whether the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence[.]' " *Schmerber,* 384 U.S. at 770 (quoting *Preston v. United States,* 376 U.S. 364, 367 (1964)). In *Schmerber,* the United States Supreme Court established that the rapid metabolization and dissipation of alcohol from the bloodstream of an individual arrested for a drunk driving related offense qualifies as an exigent circumstance justifying the attempt to secure evidence of intoxication without first securing a warrant. *Id.* at 770–71.

¶ 13. Faust asks us to conclude that once the police have obtained what they believe at the time to be a voluntary, satisfactory, and useable chemical sample of the level of the defendant's intoxication, the exigency supporting a warrantless blood draw disappears. Faust's argument relies primarily upon one sentence from our decision in *Krajewski,* where we stated that "[t]he exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken." *Krajewski,* 255 Wis. 2d 98, ¶ 40.

¶ 14. In contrast, the State argues that the exigent circumstances exception to the warrant requirement of the Fourth Amendment is premised on the danger that evidence will be destroyed rather than whether the police already possess evidence of a criminal violation. The State contends that simply because the police already have collected what they believe to be a valid chemical sample establishing the defendant's level of intoxication does not remove the exigency. In

other words, the State asserts that the circumstances giving rise to the exigency in the first instance—the rapid dissipation of alcohol from the bloodstream—are still present, regardless of whether the police have other evidence of intoxication.

¶ 15. We agree with the State and Judge Nettesheim's concurrence that to read the isolated passage from *Krajewski* upon which Faust relies as providing that exigent circumstances cease to exist in all cases when the police have already obtained a supposedly valid chemical test would be inconsistent with the nature of the exigency as illustrated in *Bohling* and *Krajewski*.

¶ 16. In *Bohling,* this court explained that *Schmerber* could be interpreted in one of two ways:

(a) that the rapid dissipation of alcohol in the bloodstream alone constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for a drunk driving related violation or crime—as opposed to taking a blood sample for other reasons, such as to determine blood type; or (b) that the rapid dissipation of alcohol in the bloodstream, coupled with an accident, hospitalization, and the lapse of two hours until arrest, constitute exigent circumstances for such a blood draw.

*Bohling,* 173 Wis. 2d at 539. We determined that the more reasonable interpretation of *Schmerber* was the former one: that exigent circumstances exist "based solely on the fact that alcohol rapidly dissipates in the bloodstream." *Id.* at 539.[7] In other words, we deter-

---

[7] Chief Justice Abrahamson's dissent contends that the State was required to offer additional evidence of exigent circumstances. Chief Justice Abrahamson's dissent, ¶ 44. This suggestion is clearly at odds with our decision in *State v.*

mined in *Bohling* that *Schmerber* stands for the proposition that the fact that alcohol rapidly dissipates in the bloodstream justifies an officer's belief that he is faced with "an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threaten[s] 'the destruction of evidence[.]' " *Schmerber,* 384 U.S. at 770 (citation omitted).

¶ 17. In addition, we noted that the United States Supreme Court has recognized that "in the context of a warrantless blood draw, . . . the Fourth Amendment warrant requirement is relaxed when the activity at issue constitutes a serious risk to public safety. Because of the public safety risk, persons engaging in such activities have a reduced expectation of privacy." *Bohling,* 173 Wis. 2d at 540 (citing *Skinner v. Ry. Labor Executives Ass'n,* 489 U.S. 602, 627 (1989)). We went on to explain the serious public safety concerns involved when a driver chooses to drive under the influence and that such concerns reduce a driver's expectation of privacy. *Id.* at 541.[8] We explained that our interpretation of *Schmerber* "strikes a favorable balance between an individual's right to be free from unreasonable searches and Wisconsin's interest in enforcing its drunk

---

*Bohling,* 173 Wis. 2d 529, 539, 494 N.W.2d 399 (1993) (stating that exigent circumstances exist "*based solely* on the fact that alcohol rapidly dissipates in the bloodstream") (emphasis added).

[8] "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion." *Michigan State Police Dept. v. Sitz,* 496 U.S. 444, 451 (1990). More than one-third of all fatal traffic crashes in the state of Wisconsin involve alcohol. http://www.dot.state.wi.us/safety/motorist/drunkdriving/index.htm (last modified September 29, 2003).

driving laws. Wisconsin's interest is vital whereas the resulting intrusion on individual privacy is minimal." *Id.* at 545.

¶ 18. Therefore, we concluded that exigent circumstances exist based solely on the rapid dissipation of alcohol from a person's bloodstream, such that a warrantless blood sample could lawfully be taken under the following circumstances:

> (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*Bohling,* 173 Wis. 2d at 533–34.

¶ 19. In *Krajewski,* we determined that the exigency justifying a warrantless blood draw—the fact that evidence is likely to be destroyed—does not disappear "as soon as a person agrees to submit to a breath test as opposed to a blood test." *Krajewski,* 255 Wis. 2d 98, ¶ 36. Focusing on the destructibility of the evidence, we reasoned that *"[t]he exigency upon which a warrantless blood draw is premised is the dissipation of alcohol in the blood stream.* An arrested person's offer to submit to one chemical test rather than another does not slow this dissipation. The evidence remains on a course to be destroyed." *Id.,* ¶ 37 (emphasis added) (citations omitted).

¶ 20. Further, we noted that *"[e]ven when a person submits to a breath test in lieu of a blood test*—outside the provisions of the implied consent statute—the test may be subject to challenge on grounds that the

person's consent to the test was not given freely and voluntarily." *Id.*, ¶ 41 (emphasis added). Ultimately, we reaffirmed the four-factor test set forth in *Bohling* and held that "a person's agreement to submit to a test of the person's choice does not negate the exigency, nor render unconstitutional a nonconsensual test of the officer's choice." *Id.* ¶ 63. We concluded:

> [T]he rapid dissipation of alcohol in the bloodstream creates an exigency that justifies a nonconsensual test of the blood, breath, or urine of a person arrested for driving while intoxicated or other similar drunk-driving related offenses, so long as the test is administered pursuant to the factors enumerated in *Bohling*.

*Id.* (emphasis added).

¶ 21. The trouble with Faust's argument and both dissents is that they ignore the nature of the exigency that justifies a warrantless blood draw as described in *Bohling* and *Krajewski*. This court in *Bohling* and *Krajewski* clearly stated that the exigency justifying a warrantless blood draw is the rapid metabolization and dissipation of alcohol from the bloodstream. The reasoning of *Krajewski*—which focused on the rapid dissipation of alcohol from the blood stream—is inconsistent with the conclusion that the exigency disappears as soon as the police have obtained what they at the time believe to be a valid chemical breath sample.

¶ 22. The fact that the police have obtained a presumably valid chemical sample of the defendant's breath indicating the defendant's level of intoxication does not change the fact that the alcohol continues to dissipate from the defendant's bloodstream. The evidence sought "remains on a course to be destroyed." *Krajewski*, 255 Wis. 2d 98, ¶ 37. In *Krajewski*, we specifically rejected the contention that "the exigency

197

exception to the warrant requirement . . . turn[s] upon the *means* used for executing the search rather than the urgency involved in the steady dissipation of alcohol." *Id.*, ¶ 42 (emphasis in original). We also intimated that the exigency remained "[e]ven when a person submits to a breath test in lieu of a blood test" because the suspect could later challenge the test on the grounds that he did not freely and voluntarily consent to the test. *Id.*, ¶ 41.

¶ 23. Thus, we conclude, based on the rationale of *Bohling* and *Krajewski,* that the presence of one presumptively valid chemical sample of the defendant's breath does not extinguish the exigent circumstances justifying a warrantless blood draw. "[T]he relevant basis for exigency here is that evidence is likely to be destroyed." *Krajewski,* 255 Wis. 2d 98, ¶ 36. Regardless of whether the police had obtained a breath sample from Faust, the evidence of intoxication revealed by the blood test was on a course towards destruction. The nature of the evidence sought, not the existence of other evidence, determines the exigency. We have found no authority that stands for the proposition that the police are limited to obtaining only a single piece of evidence under the exigent circumstances doctrine.[9]

[9] *Cf. United States v. Reid,* 929 F.2d 990, 991–94 (4th Cir. 1991) (upholding multiple breath tests of one defendant under the exigent circumstances doctrine). Also, we note that the United States Supreme Court rejected a Fourth Amendment challenge to regulations promulgated by the Federal Railroad Administration that authorized railroads to collect *both* blood and urine samples from employees involved in railroad accidents. *Skinner v. Ry. Labor Executives Ass'n,* 489 U.S. 602, 609–10, 624 (1989).

¶ 24. In addition to being consistent with the nature of the exigency as described in *Bohling* and *Krajewski*, our conclusion comports with the underlying objective test for determining whether exigent circumstances exist. As noted *supra*, the test for whether exigent circumstances are present is an objective one and inquires into whether the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence[.]' " *Schmerber,* 384 U.S. at 770 (quoting *Preston,* 376 U.S. at 367). Here, despite the

---

Although the case did not specifically involve an application of the exigent circumstances doctrine, in rejecting the contention that a warrant was necessary to render these tests reasonable under the Fourth Amendment, the Court noted that "alcohol and other drugs are eliminated from the bloodstream at a constant rate, and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible." *Id.* at 623 (citations omitted). The Court stated that "the delay necessary to procure a warrant nevertheless may result in the destruction of valuable evidence." *Id.* The Court did not state or even imply that the need to gather the evidence or the danger of its destruction was extinguished once one of the tests was performed.

We discussed *Skinner* in *Bohling,* 173 Wis. 2d at 539–41, to support our conclusion that the exigency was based solely on the fact that alcohol rapidly dissipates from the bloodstream. *See also Reid,* 929 F.2d at 993 ("In *Skinner,* the Supreme Court reiterated the notion that time is of the essence when there is a need to test alcohol in the body."). We find these more recent decisions, which address the warrant requirement in the context of gathering evidence of intoxication, to be more persuasive than the dated cases relied upon by Justice Prosser's dissent that do not concern the issue presented in this case. Justice Prosser's dissent, ¶¶ 58–60.

presence of one presumptively voluntary and valid breath test, Officer Olsen might have reasonably believed that it was necessary to secure additional evidence of Faust's level of intoxication without a warrant in order to prevent needed evidence from being destroyed.

¶ 25. First, we recognize the police do not know when they administer a breath test whether the result of that test is valid and useable. In his concurrence, Judge Nettesheim indicated that appellate courts routinely hear a stream of challenges involving breath tests. *Faust,* 267 Wis. 2d 783, ¶ 23 n.3. As Judge Nettesheim stated:

> [M]y concern is that the police do not have a crystal ball in these situations, a proposition which the *Krajewski* decision seems to recognize. While the police here presumably believed that they had obtained a valid breath test, this does not guarantee, in the very words of *Krajewski,* a *satisfactory and useable* breath test. That determination would depend on a future ruling by the trial court in the event that Faust should challenge the breath test.

*Id.,* ¶ 22 (emphasis in original). Indeed, at oral argument counsel for Faust indicated that he planned to challenge the accuracy of the chemical breath test, due to medication that Faust was allegedly taking at the time of arrest.

¶ 26. Second, police often need to acquire additional, more definitive evidence of intoxication where the results of a chemical analysis of a breath sample are close to the legal limit. Here, the preliminary breath test indicated that Faust possessed an alcohol concentration of 0.13. Chemical analysis of the breath sample provided at police headquarters indicated an alcohol concentration of 0.09. While a search of Faust's criminal

driving record indicated that he had two drunk driving related offenses and was thus subject to a prohibited alcohol content of 0.08, the police do not know in advance whether any of these prior convictions will ultimately be admitted into court. *See Faust*, 267 Wis. 2d 783, ¶ 23 (Nettesheim, J., concurring) (collecting cases where the defendant challenged alleged prior convictions). Had Faust ultimately successfully challenged one or both of his prior convictions—something the police had no way of knowing at the time the breath test was taken—the State would have had to prove that Faust operated his motor vehicle with an alcohol concentration of at least 0.1. *See* Wis. Stat. § 885.235(1g)(c). However, preliminary breath tests are not admissible at trial to prove the defendant's level of intoxication; they are only admissible at the probable cause hearing. Wis. Stat. § 343.303. Thus, the State would have been left with the results of the breathalyzer, which indicated that Faust possessed an alcohol concentration of only 0.09.

¶ 27. Third, even if the suspect has apparently complied with the implied consent statute and provided an initial chemical sample, there may later be an issue as to whether the defendant actually consented to take the test. *State v. Rydeski*, 214 Wis. 2d 101, 106, 571 N.W.2d 417 (Ct. App. 1997) ("[A] verbal refusal is not required. The conduct of the accused may serve as the basis for a refusal."). Likewise, there is no guarantee that the defendant will not argue at trial that the police coerced his or her consent to a test through use of the implied consent law or failed to properly administer the warning in Wis. Stat. § 343.305(4).[10] Also, if a suspect

---

[10] *See, e.g., State v. Piddington*, 2001 WI 24, ¶ 1, 241 Wis. 2d 754, 623 N.W.2d 528; *Village of Little Chute v. Walitalo*, 2002

consents to a blood test outside the parameters of the implied consent statute, there may later be an issue as to whether his consent was freely given. *Krajewski,* 255 Wis. 2d 98, ¶ 41. Therefore, the fact that the police had obtained a single presumptively valid breath sample from Faust did not remove the need to gather evidence of intoxication in light of "the urgency involved in the steady dissipation of alcohol." *Krajewski,* 255 Wis. 2d 98, ¶ 42.[11] The threat remained that "evidence [would] be lost or destroyed if time [were] taken to obtain a warrant." *Bohling,* 173 Wis. 2d at 538.

¶ 28.　Furthermore, we note the practical consequences that would ensue if we were to accept Faust's position that the exigency evaporates once the police have secured a single breath test that the officer believes to be voluntary and useable. First, as we explained in *Krajewski,* under Wisconsin's implied consent statute, § 343.305, "[a] person who operates a

WI App 211, ¶ 8, 256 Wis. 2d 1032, 650 N.W.2d 891; *County of Ozaukee v. Quelle,* 198 Wis. 2d 269, 274, 280–84, 542 N.W.2d 196 (Ct. App. 1995).

[11] Our opinion in Krajewski emphasized that "[t]he exigency upon which a warrantless blood draw is premised is the dissipation of alcohol from the blood stream." *Krajewski,* 255 Wis. 2d 98, ¶ 37. Also, we reiterated that "the relevant basis for exigency here is that evidence is likely to be destroyed." *Id.,* ¶ 36. We emphasized "the urgency involved in the steady dissipation of alcohol." *Id.,* ¶ 42. Also, we acknowledged that this court in *Bohling* had established that "[t]he rapid dissipation of alcohol in the blood stream alone constitutes a sufficient exigency" and "reject[ed] a requirement that an officer seek a search warrant in the period immediately following arrest." *Id.,* ¶ 32. Thus, we do not understand how one of the dissents, written by the author of *Krajewski,* can accuse us of "focus[ing] narrowly on the fact that alcohol is dissipating in the bloodstream." Justice Prosser's dissent, ¶ 57.

motor vehicle in this state is deemed to have given consent *to one or more tests* of his or her blood, breath, or urine upon the request of a law enforcement officer if the person is arrested for a drunk driving offense." *Krajewski,* 255 Wis. 2d 98, ¶ 19 (emphasis added).[12] If we were to accept Faust's position, then when an individual arrested for drunk driving consents to the initial breath test and refuses all subsequent tests, the police would be compelled to obtain a warrant to conduct any additional test. As a result, "the arrested person would dictate the terms of investigation, limiting the police to a single option for a blood test—a search warrant." *Id.,* ¶ 42.[13]

---

[12] Wisconsin Stat. § 343.305(3) provides, in pertinent part:

(a) Upon arrest of a person for violation of s. 346.63(1) . . . a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (2). Compliance with a request for one type of sample does not bar a subsequent request for a different type of sample.

Notably, Justice Prosser's dissent fails to even mention § 343.305(3).

[13] As we discussed in *Krajewski,*

In enacting the implied consent statute, the legislature authorized a law enforcement officer to request his or her choice among these three chemical tests and to request more than one chemical test from a person arrested for a drunk driving offense. In the absence of compelling evidence otherwise, we must presume that the legislature had good reasons for giving law enforcement officers the right to choose among chemical tests. These reasons could include the fact that one test may be better able to detect the presence of controlled substances than another; one test may be more efficacious as evidence before a jury than another; one test may be less susceptible to attack in court than another; one test may be more readily available on any given occasion than another; and tests taken in a hospital permit observation of an intoxicated

¶ 29. Second, as we noted in *Krajewski*, "[b]lood samples are the most direct means of measuring alcohol concentration in the blood . . . ." *Id.,* ¶ 40. However, obtaining a warrant to authorize a blood draw may take some time and may often be impracticable. *Id.,* ¶ 42 n.19.[14] Police would be forced to choose between obtaining the most direct and accurate evidence of intoxication and taking the risk this evidence would be destroyed, or procuring the most easily ascertainable evidence of intoxication, knowing that it is often subject to challenge in court. Thus, such a result would impair the legitimate evidence gathering objectives of the police because the level of blood alcohol would continue to dissipate until the person is transported to a hospital and blood is actually drawn. *See id.,* ¶ 38. Yet, as the United States Supreme Court recognized in *Skinner,* "[t]he government's interest in dispensing with the warrant requirement is at its strongest when, as here, 'the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.' " *Skinner,* 489 U.S. at 623 (quoting *Camara v. San Francisco Mun. Ct.,* 387 U.S. 523, 533 (1967)).

---

person by a medical professional before the person is taken to jail. *These reasons are equally valid for chemical tests taken outside the implied consent statute.*

*Krajewski,* 255 Wis. 2d 98, ¶ 55 (emphasis added).

[14] Apparently, according to Justice Prosser's dissent, these concerns that we recognized in *Krajewski* are no longer valid. Justice Prosser's dissent, ¶ 59 (quoting *Johnson v. United States,* 333 U.S. 10, 14–15 (1948)). We also note that the length of time required to secure a warrant is important because chemical tests must usually be taken within three hours after arrest in order to be considered prima facie evidence of intoxication. *See* Wis. Stat. § 885.235(3).

¶ 30. Ironically, Faust's position might also subject Wisconsin drivers to a greater number of blood tests. Because the police would be required to obtain a warrant to perform a nonconsensual blood test after a driver had consented to a breath test, police departments might routinely make a blood test the first test for which they ask under the implied consent statute so as to be able to gather the most direct evidence of a driver's level of intoxication without fear of the evidence being destroyed. Those stopped for an alcohol-related driving offense would be routinely subject to a blood test as a first test, a procedure far more time-consuming and intrusive than a simple chemical breath test. *Skinner,* 489 U.S. at 625–26.

B. Reasonableness

¶ 31. Although we have concluded that the nature of the evidence sought, not the existence of other evidence, determines the exigency, our holding does not mean that the police have carte blanche to take an *unlimited* number of tests as long as alcohol continues to dissipate from the bloodstream. We need not today determine the outer boundaries of the exigent circumstances exception to the warrant requirement and draw a bright line in order to answer questions such as whether the police may constitutionally take multiple blood tests or a combination of chemical breath samples, urine tests, and blood tests all without a warrant, for these are not the facts before us. As explained in *Krajewski,* "[e]xigency relieves the state of the burden of obtaining a warrant before a search. It does not relieve the state of establishing, in a hearing after the search, that it met the requirements for a constitutional search without a warrant, including the

requirement of reasonableness." *Krajewski,* 255 Wis. 2d 98, ¶ 44. Thus, the mere presence of exigent circumstances is insufficient for a warrantless blood draw to pass constitutional muster; the search must also meet the test for reasonableness that we articulated in *Bohling. Krajewski,* 255 Wis. 2d 98, ¶¶ 45, 63; *Bohling,* 173 Wis. 2d at 533–34.[15] Faust concedes that the test here satisfied the requirements set forth in *Bohling.*

¶ 32. As the United States Supreme Court has stated, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250 (1991). "Reasonableness" pervades the test we set forth for evaluating the constitutionality of warrantless blood draws in *Bohling. Bohling,* 173 Wis. 2d at 533–34. There may well be circumstances where the police have obtained sufficient evidence of the defendant's level of intoxication that a further test would be unreasonable under the circumstances presented.

¶ 33. However, such are not the facts presented today. Here, the police obtained a chemical breath sample, the testing of which indicted that Faust pos-

---

[15] Chief Justice Abrahamson's dissent is just plain wrong when it asserts that *Bohling* is not applicable in this case. Chief Justice Abrahamson's dissent, ¶ 49. As we explained in *Bohling,* 173 Wis. 2d at 533–34, even when exigent circumstances are present based on the rapid dissipation of alcohol from the bloodstream, the search still must be reasonable in order to pass constitutional muster. *See also Krajewski,* 255 Wis. 2d 98, ¶ 63 ("[W]e reaffirm that the rapid dissipation of alcohol in the bloodstream creates an exigency that justifies a nonconsensual test of the blood, breath, or urine of a person arrested for drunk driving while intoxicated . . . *so long as the test is administered pursuant to the factors enumerated in Bohling.*") (emphasis added). Thus, *Bohling* is always applicable when evaluating the constitutionality of a warrantless blood draw in a drunk driving case.

sessed an alcohol concentration of 0.09. As noted *supra,* while the police were made aware after this test was performed that Faust had incurred two previous alcohol-related driving convictions, they could not know whether one or both of these convictions would ultimately be admitted at trial. If either of them were ultimately determined to be inadmissible, the State would be required to prove that Faust was operating his vehicle with an alcohol concentration of 0.1 or higher. *See* Wis. Stat. § 885.235(1g)(c). The preliminary breath test that indicated Faust possessed an alcohol concentration of 0.13 would not have been admissible for this purpose. Wis. Stat. § 343.303. Additionally, the police had no way of knowing at the time the test was administered whether the chemical analysis of Faust's breath sample would be useable at trial. Given the strong state interest in removing drunk drivers from Wisconsin's roadways (especially reoffending drunk drivers), Faust's two apparent drunk driving related convictions, and the results of the initial chemical breath test, we cannot say that requiring Faust to submit to a single warrantless blood draw was unreasonable.[16]

---

[16] Thus, we merely determine that *under the facts of this case,* it was reasonable for police to take one blood test in addition to the single chemical breath test. We do *not* hold that it is reasonable for the police to "take as many valid tests of the suspect's blood alcohol as they [think] necessary to sustain a conviction." Chief Justice Abrahamson's dissent, ¶ 45. To assuage the concern of the dissent, we reiterate that the reasonableness of a warrantless nonconsensual test when a presumptively valid consensual test is present will depend upon the totality of the circumstances of each individual case.

We also point out the internal inconsistencies present in Chief Justice Abrahamson's dissent. On the one hand, it

## VI. CONCLUSION

¶ 34. In sum, we reaffirm that the rapid dissipation of alcohol in the bloodstream of an individual arrested for a drunk driving related offense constitutes an exigency that justifies the warrantless nonconsensual test of that individual's blood, breath, or urine, so long as the test satisfies the four factors enumerated in *Bohling*. The presence of one presumptively valid chemical sample of the defendant's breath does not extinguish the exigent circumstances justifying a warrantless blood draw. The nature of the evidence sought —that is, the rapid dissipation of alcohol from the bloodstream—not the existence of other evidence, determines the exigency. Because exigent circumstances were present in this case and the blood test satisfied the test we set forth in *Bohling,* we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 35. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with the circuit court that the results of the forced blood test should be suppressed. The blood test was taken without consent, without a search warrant and without exigent circumstances.

¶ 36. Exigent circumstances did not exist, the circuit court ruled, because the arresting officer had already obtained what he believed to be a voluntary and

---

stresses that exigent circumstances are to be determined under a totality of the circumstances test and chastises the majority opinion for supposedly allowing police to take an unlimited number of tests. Chief Justice Abrahamson's dissent, ¶¶ 43, 45. On the other hand, the dissent bemoans the fact that we do not create a bright line rule establishing how many tests are reasonable. Chief Justice Abrahamson's dissent, ¶ 50.

sufficient breath test that demonstrated that Faust's BAC was in excess of the legal limit. The circuit court postulated that "the problem could have been obviated by [the law enforcement officer] purely requesting blood as the primary test."

¶ 37. The circuit court got the case right. It followed this court's decision in *State v. Krajewski,* 2002 WI 97, ¶ 40, 255 Wis. 2d 98, 648 N.W.2d 385, *cert. denied,* 537 U.S. 1089 (2002): "The exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken."

¶ 38. Law enforcement officers have a choice of which of several chemical tests to administer. As we explained in *Krajewski,* we must presume that the legislature had good reasons for giving law enforcement officers a choice among chemical tests. Each test has different attributes.[1] *Krajewski* made it clear that the choice was the officer's, not the accused's. The chemical test the officer chose in the present case was, according to the officer's own testimony, a satisfactory, useable chemical test.

¶ 39. Adhering to the *Krajewski* case decided and published a mere two years ago, I conclude that, without consent, without a search warrant, and without exigent circumstances, the forced blood test in the present case violated the United States Constitution.

¶ 40. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and

---

[1] *State v. Krajewski,* 2002 WI 97, ¶ 40, 255 Wis. 2d 98, 648 N.W.2d 385, *cert. denied,* 537 U.S. 1089 (2002).

seizures, shall not be violated".[2] The crux of the Fourth Amendment is reasonableness.

¶ 41. "The United States Supreme Court has consistently held that warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few carefully delineated exceptions."[3] The majority relies upon the exigency exception to justify the warrantless search in the present case, and its reasoning is broader than the exception.

¶ 42. The majority erroneously holds that the nature of the evidence alone determines whether exigent circumstances exist.[4] The majority declares without any legal support at all, and contrary to our own *Krajewski* decision, that "[t]he nature of the evidence sought, not the existence of other evidence, determines the exigency."[5]

¶ 43. The accepted principle of law is that exigent circumstances are determined by examining the totality of the circumstances.[6] The test for exigent circumstances upon review is whether a police officer under the circumstances known to the officer at the time "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to

---

[2] U.S. Const Amend. IV.

[3] *State v. Murdock,* 155 Wis. 2d 217, 227, 455 N.W.2d 618 (1990).

[4] Majority op., ¶ 34.

[5] Majority op., ¶ 23.

[6] *State v. Smith,* 131 Wis. 2d 220, 229, 388 N.W.2d 601 (1986); *State v. Kraimer,* 99 Wis. 2d 306, 321, 298 N.W.2d 568 (1980); *State v. Mielke,* 2002 WI App 251, ¶¶ 7–10, 257 Wis. 2d 876, 653 N.W.2d 316; *State v. Garrett,* 2001 WI App 240, ¶ 16, 248 Wis. 2d 61, 635 N.W.2d 615.

obtain a warrant, under the circumstances, threatened the 'destruction of evidence.' "[7]

¶ 44. Evidence of alcohol in the body is destroyed by the passage of time, without any act of the individual involved or of law enforcement. All evidence of intoxication cannot be gathered and preserved. Here evidence of intoxication has been preserved in the form of the result of a valid breathalyzer test. Evidence of intoxication that is being destroyed in the present case is cumulative of evidence already collected and preserved. The State offered no proof of exigent circumstances except for continuing dissipation of alcohol.

¶ 45. The majority's argument is essentially that because law enforcement officers do not know what will happen at trial (and no one does, of course), it was reasonable for them to take as many valid tests of the suspect's blood alcohol as they thought necessary to sustain a conviction.[8] The majority also is concerned that a defendant may exercise his or her constitutional rights and challenge prior convictions or the validity of the results of a chemical test.[9]

¶ 46. This court understood and responded to these problems in *Krajewski*. The *Krajewski* court held that law enforcement officers may choose to give the chemical test they think appropriate under the circumstances.

¶ 47. Furthermore, the legislature apparently enables law enforcement officers to take more than one chemical test by request. Under the implied consent

---

[7] *State v. Bohling,* 173 Wis. 2d 529, 538–39, 494 N.W.2d 399 (1993) (quoting *Schmerber v. California,* 384 U.S. 757, 770–71 (1966)).

[8] Majority op., ¶ 33.

[9] *Id.*

law, if the suspect refuses to submit to a chemical test, the police may take possession of the person's driver's license and prepare a notice of intent to revoke the person's operating privilege.[10] Therefore, the state's interest in keeping drunk drivers off the road appears to be met, even if a warrantless blood draw is prevented by the Fourth Amendment.

¶ 48. Although the majority concedes that law enforcement officers do not have carte blanche to take an unlimited number of tests as long as alcohol continues to dissipate in the bloodstream, it refuses to define the outer limits of how many tests are reasonable. The majority opinion falls back to the reasonableness test, citing the four-part reasonableness test of *Bohling*.[11]

---

[10] Wisconsin's implied consent statute states in pertinent part:

> 343.305 Tests for intoxication; administrative suspension and court-ordered
>
> (3) Requested or required.
>
> (a) Upon arrest of a person for violation of s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or for a violation of s. 346.63(2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (2). Compliance with a request for one type of sample does not bar a subsequent request for a different type of sample.
>
> . . . .
>
> (9) Refusals; Notice and Court Hearing.
>
> (a) If a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately take possession of the person's license and prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege.

[11] Majority op., ¶ 31.

¶ 49. *Bohling* is not applicable to determine exigent circumstances in the present case when more than one test was administered. The first and second of the four *Bohling* factors amount to justification for arrest for drunk driving. The third factor relates to the setting under which blood is drawn. The fourth factor relates to exigent circumstances. But, according to the majority opinion, dissipation of alcohol creates exigent circumstances. So no reasonableness test is offered by the majority. The internal inconsistencies in the majority opinion are apparent and troubling.

¶ 50. By failing to define the outer limits of what is reasonable in a blood draw case, the majority opinion opens the door to more litigation. The majority opinion also leaves law enforcement officers, litigants, circuit courts, and the court of appeals in a quandary, without guidance regarding what number of tests is reasonable.

¶ 51. Because the breathalyzer test was sufficient to preserve evidence of Faust's intoxication until trial, no exigent circumstances existed to take blood without consent or a search warrant. That alcohol naturally dissipates in the blood ordinarily creates an exigent circumstance. It does not, however, create an exigent circumstance under the facts of this case.

¶ 52. For the reasons set forth, I dissent.

¶ 53. I am authorized to state that Justices ANN WALSH BRADLEY and DAVID T. PROSSER, JR. join this dissent.

¶ 54. DAVID T. PROSSER, J. *(dissenting).* The majority opinion is well intentioned. None of the members of the court is unconcerned about the continuing

carnage from intoxicated drivers,[1] or the continuing prevalence of impaired driving on Wisconsin roadways.[2] These legitimate concerns underlay our decisions in *State v. Bohling,* 173 Wis. 2d 529, 494 N.W.2d 399 (1993), and *State v. Krajewski,* 2002 WI 97, 255 Wis. 2d 98, 648 N.W.2d 385.

¶ 55. The problem in this case is that the arresting officer was not satisfied with a voluntary, satisfactory, and useable chemical breath test from the defendant. He wanted a second test as backup. No reason was given for this second "search" of the defendant except the desire to gather additional evidence in the event it was needed. The circuit court later suppressed the product of this second search without a warrant on grounds that "exigent circumstances did not exist to justify the warrantless taking of Defendant's blood."

¶ 56. In order to justify a second warrantless taking, we are forced to redefine "exigency" to the point that it becomes meaningless.

I

¶ 57. *The American Heritage Dictionary of the English Language* defines "exigent" as an adjective that means "Requiring immediate action or remedy." *The American Heritage Dictionary of the English Language*

---

[1] There were 292 people killed and 6,570 people injured as a result of alcohol-related motor vehicle crashes in Wisconsin during the year 2002, according to a report published in February 2004 by the Wisconsin Department of Transportation, Bureau of Transportation Safety (an average of 1 person killed or injured every 77 minutes). www.dot.wisconsin.gov/safety/motorist/crashfacts/index.htm (last visited June 30, 2004).

[2] There were 37,775 people arrested for operating while intoxicated on Wisconsin roadways in 2002. *Id.*

642 (3d ed. 1992). An "exigency" is defined as a "pressing or urgent situation." *Id.* "Exigencies are "urgent requirements; pressing needs." *Id.* It is easy enough to explain a second search for breath, blood, or urine if one focuses narrowly on the fact that alcohol is dissipating in the blood stream at the time the search is undertaken. It is not so easy to justify a second search for backup evidence if one attempts to justify that search as an urgent requirement.

¶ 58. "Exigency" first appeared in Fourth Amendment jurisprudence in *McDonald v. United States*, 335 U.S. 451, 455–56 (1948). In that case, the Court suppressed evidence obtained when police intruded into the home of a suspected "numbers" operator. The officers, who had the defendant under surveillance for two months, entered by open window to arrest the suspect because the police heard an adding machine typically used in numbers operations. Justice Douglas, writing for the majority, reflected on the importance of the Fourth Amendment:

> We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some *grave emergency,* the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the ab-

sence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the *exigencies* of the situation made that course imperative.

*Id.* (emphasis added).

¶ 59. *McDonald* followed a line of cases that included *Johnson v. United States,* 333 U.S. 10 (1948). In *Johnson,* the Court explained the justification for one of the exceptions to the warrant requirement but it did not use the term "exigency." Instead it used the term "exceptional circumstances." *Id.* at 14–15. The Court addressed the search of a hotel room where, based on the smell of opium in the hallway, officers believed that narcotics activity would be found. The Court held that the officers could have, and therefore should have, obtained a warrant.

> There are *exceptional circumstances* in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present evidence to a magistrate. There are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. *No evidence or contraband was threatened with removal or destruction,* except perhaps the fumes which we suppose in time would disappear. But they were not capable at any time of being reduced to possession for presentation to court.

*Id.* at 14–15 (emphasis added).

¶ 60. Three years later, in *United States v. Jeffers,* 342 U.S. 48 (1951), the Court was again presented with a warrantless hotel room search. The defendant in *Jeffers* attempted to bribe the hotel detective with $500 to let the defendant into a room occupied by his two aunts so that the defendant could retrieve something he had "stashed" in the room. The hotel detective asked that the defendant call back later, and in the meantime phoned the police. The police investigated and tried knocking on the hotel room door, and, when nobody answered, the police had an employee let them into the hotel room. After a thorough search, they discovered narcotics in the room's closet. The Court found the search violated the Fourth Amendment and suppressed the evidence of the narcotics. The Court reviewed the principles of the Fourth Amendment and, in doing so, cited *Johnson* for the proposition that warrantless searches may be proper in "exceptional circumstances." *Id.* at 51. The Court cited *McDonald* for the proposition that the Government bears the burden of demonstrating that an exception to the warrant requirement may be justified, *id.,* but the Court did not mention "exigency" in any manner.

¶ 61. The landmark decision in *Schmerber v. California,* 384 U.S. 757 (1966), is an important link in this line of cases, but it also did not use the terms "exigent" or "exigency." The relevant discussion instead used the term "emergency."

> The officer in the present case, however, might reasonably have believed that he was confronted with an *emergency,* in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence," *Preston v. United States,* 376 U.S. 364, 367. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking

stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Id.* at 770–71 (emphasis added).

¶ 62. Over the years, the Wisconsin Supreme Court and the United States Supreme Court have characterized *Schmerber* as representing the "exigent circumstances" exception to the warrant requirement. *See Winston v. Lee,* 470 U.S. 753, 759 (1985); *United States v. Dionisio,* 410 U.S. 1, 8–9 (1973); *State v. Bohling,* 173 Wis.2d 529, 538, 494 N.W.2d 399 (1993).

## II

¶ 63. In the present case, the police obtained satisfactory, useable evidence. Nothing threatened the destruction of that evidence. The only thing "threatened" was the destruction of additional evidence of the same character.

¶ 64. As a former prosecutor, I repeatedly represented to juries that machines to measure the alcohol content of breath were scientific and reliable. Consequently, it is hard to embrace the proposition that an "exigency" of constitutional stature exists to obtain backup evidence from samples of blood or urine. If that were correct, it would seem as though an exigency exists in every case in which blood is not drawn. Such an exigency is a built-in rationale for extended detention and additional tests potentially amounting to harassment.

¶ 65. If the officer in this case had offered *any* compelling explanation for why a second test was "needed" as opposed to "desired," I would probably not be writing this dissent. But on the facts presented, I cannot conclude that the second warrantless search of the defendant was entitled to march with other recognized "exigencies" in our law. The result in this case untethers the "exigent circumstances" exception to the warrant requirement from the premises supporting the exception. I join the opinion of the Chief Justice and respectfully dissent.

¶ 66. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.